**Joan E. LYFORD, Individually and on behalf of all other persons similarly situated, Plaintiff-Appellant,**

v.

**Ralph SCHILLING and Pan American University, Defendants-Appellees.**

No. 83–2213.

United States Court of Appeals, Fifth Circuit.

Jan. 24, 1985.

Rehearing and Rehearing En Banc Denied March 19, 1985.

Joan E. Lyford, pro se.

Jim Mattox, Atty. Gen. of Tex., Joseph W. (Bill) Barbisch, Jr., Asst. Atty. Gen., Austin, Tex., J. Scott Chafin, Gen. Counsel, Edinburg, Tex., for Pan Am.

Before CLARK, Chief Judge, JOHNSON, and WILLIAMS, Circuit Judges.

PER CURIAM:

Joan Lyford appeals: (1) the judgment entered for the defendant in her suit claiming sex discrimination under Title VII, 42 U.S.C. § 2000e–5, and (2) the order denying her motion for class certification. We affirm both decisions.

I

Lyford was employed as an English instructor by Pan American University under term contracts for both summer sessions of 1973, the 1973–74 academic year, and the first summer session of 1974. In February of 1974 Lyford applied for a position during the 1974–75 academic year, but was informed in April that no positions were available.

Subsequently, a position did open when an English Department faculty member took a leave of absence in July of 1974. Because the beginning of the fall semester

was imminent, the Department did not have enough time to use its normal hiring procedures, which included national recruitment under an affirmative action plan. Instead, Dr. Grantz, the Chair of the English Department, reviewed all applications on file and submitted those which met the minimum criteria to the Executive Advisory Committee for a hiring recommendation. This committee consisted of eight tenured faculty members and committee chairs of the English Department. Two members, the Chair and Lyford's former husband, did not vote on this particular decision.

The Committee reviewed six applicants: Lyford, three other Anglo-Caucasian women, and two Hispanic-Caucasian men. They were not given any guidelines to use in evaluating the candidates. The members considered each applicant's transcript, background, recommendations, and any personal experiences the members may have had with any applicant. At the close of discussion, each member made a confidential ranking of the applicants. These individual votes were then averaged to produce a single result for the Committee as a whole. The two Hispanic men, despite their lack of teaching experience, were ranked first and second; Lyford was third; and the other Anglo-Caucasian women below her. The individual ranked first, de Luna, was ultimately hired.

Lyford charged Pan-American with discriminating against her on the basis of sex and national origin in this decision by filing a complaint with the Equal Employment Opportunity Commission in January of 1975. Eighteen months later, the Commission determined that there was reason to believe Lyford had experienced sexual discrimination, but not that she had been discriminated against on the basis of her national origin. After Pan American refused to conciliate, the Commission issued a right to sue letter. Plaintiff then filed the instant suit, alleging only sex discrimination.

## II

The case came to trial before the judge without a jury in November of 1982. The trial lasted only one day. Lyford proved that she was female, qualified, duly applied, and a male was hired. Pan American called the committee members to testify as to the motivating factors behind their individual decisions. Plaintiff rested her case after this testimony.

The district court determined that at least four of the committee members gave at least some consideration to de Luna's Hispanic ethnicity in evaluating his application because of their concern that Pan American, which has an 80% Hispanic student body, had no Hispanic faculty in the English Department.[1] They were also impressed with de Luna's transcript, recommendations, and enthusiasm for the job. The two remaining committee members testified that they did not remember the vote, although one did state that de Luna's ethnicity probably would have affected him favorably. The court also found that teaching experience was less important to most of the committee members than were other factors.

The trial court's opinion details the testimony of only two individuals pertaining to Lyford. One member said he ranked Lyford first because of her teaching experience; the other gave Lyford a low rating because of her personal experience with the plaintiff.

The court concluded Lyford was not discriminated against because of her sex. It also reached two conclusions pertaining to the fact that several Committee members favored de Luna because of his ethnicity. First, the court stated since plaintiff pled only sex discrimination defendant could rebut her *prima facie* case without also establishing that it had engaged in no other form of discrimination prohibited by Title VII. In the alternative, the court held that plaintiff could not be granted relief based upon ethnic discrimination because plain-

---

**1.** Plaintiff's motion to have a transcript produced at the expense of the United States was denied by both the trial judge and this court.

Since no transcript was provided, the record on appeal is limited.

tiff's failure to plead or urge ethnic discrimination at any point during the proceedings had prevented the development of a record that was adequate to determine whether any consideration of de Luna's ethnicity violated Title VII.

### III

On appeal Lyford contends that the trial court erred in finding that Pan American had rebutted her *prima facie* case because the rebuttal consisted of evidence of illegal ethnic discrimination. She also appeals the denial of her motion for class certification.

### A

■ Plaintiff misunderstands the nature of review given a Title VII case that has been fully tried on the merits. The three-step analysis of *prima facie* case, rebuttal, and showing of pretext defined by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), is not the proper method of evaluating such a case. *Williams v. Southwestern Bell Telephone Co.*, 718 F.2d 715, 717 (5th Cir.1983); *see e.g. Wall v. National Railroad Passenger Corp.*, 718 F.2d 906, 908–09 (9th Cir.1983). As the Supreme Court stated in *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983):

> [w]hen the defendant fails to persuade the district court to dismiss the action for lack of a *prima facie* case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the fact finder must then decide whether the rejection was discriminatory within the meaning of Title VII. At this stage, the *McDonnell-Burdine* presumption "drops from the case," and "the factual inquiry proceeds to a new level of specificity." The "factual inquiry" in a Title VII case is "whether the defendant intentionally discriminated against the plaintiff." (citations omitted)

■ Once parties have introduced all their evidence, the district court, as in every civil case, must decide whether plaintiff has proved by a preponderance of the evidence that defendant violated Title VII by intentionally discriminating against her. This burden may be satisfied by "persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 101 S.Ct. at 1095, *quoted in Aikens*, 103 S.Ct. at 1482.

■ Under *Pullman-Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982) we must review the trial court's determination under the clearly erroneous standard defined by Fed.R. Civ.P. 52(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948), *quoted in Williams*, 718 F.2d at 718.

### B

■ In this case the trial court found that the Committee members favored de Luna because of his ethnicity, recommendations, transcript, and his enthusiasm. According to the court's further conclusion, the Committee would have reached the same result if de Luna had been female. On this basis the court "[found] and conclud[ed] with confidence that [Lyford] was not discriminated against on the basis of sex."

Nothing in the record before us indicates this finding was clearly erroneous.

### C

Plaintiff contends that this finding must be reversed because the court relied on evidence of illegal ethnic discrimination in reaching his decision. Her contention is without merit.

In one part of its decision the trial court assumed *arguendo* that even illegal ethnic discrimination can be used under the *Burdine* analysis to rebut a *prima facie* case of sex discrimination. However, we need not determine whether this conclusion, as an abstract principle of law, affected the court's evaluation of Lyford's opening proof. Once the case has been fully tried, the need to analyze each separate function of the *McDonnell-Burdine* analysis "drops from the case." *Aikens*, 103 S.Ct. at 1482.

Instead, we rely on the court's alternative conclusion pertaining to the issues of ethnic discrimination: that the record was not adequate to permit a determination of whether the consideration of de Luna's ethnicity was legitimate under Title VII. The court found that this inadequacy was due to Lyford's failure to plead ethnic discrimination in her original complaint or her proposed amended complaint, to raise it in the pre-trial order, or to move during trial to amend her complaint to charge ethnic discrimination. Lyford had the overall burden of proving that discrimination barred by Title VII caused or contributed to Pan American's failure to hire her. The default in demonstrating that such ethnic considerations as did play a part in this employment decision were impermissible is properly chargeable to Lyford.

 Lyford failed to plead or develop the claim that she was the victim of illegal ethnic discrimination in the trial court. She cannot make it the basis for reversal on appeal. *See Hall v. Board of School Commissioners*, 681 F.2d 965, 970 (5th Cir. 1982). As was the case with the trial court, we cannot determine that the Committee's partial use of ethnic considerations was indeed illegal. Accordingly, we cannot conclude that the trial court relied on any impermissible factor in its ultimate determination that Pan American had not discriminated against Lyford because of her sex.

## IV

Lyford chose to present her case as one of sex discrimination alone. The trial judge's findings on that issue are not clearly erroneous. This conclusion necessarily disposes of Lyford's appeal from the denial of her motion for class certification. The judgment appealed from is

AFFIRMED.