**Glenda MERWINE, Plaintiff-Appellant,**

**v.**

**BOARD OF TRUSTEES FOR STATE INSTITUTIONS OF HIGHER LEARN-ING, et al., Defendants-Appellees.**

No. 84–4036.

United States Court of Appeals,
Fifth Circuit.

March 8, 1985.

---

George McKee, Starkville, Miss., James D. Waide, III, West Point, Miss., for plaintiff-appellant.

William H. Ward, H. Russell Rogers, II, Starkville, Miss., Ed David Noble, Jr., Asst. Atty. Gen., Jackson, Miss., for defendants-appellees.

James S. Whitehead, Mary Hutchings Reed, Chicago, Ill., for amicus curiae.

Before REAVLEY, TATE, and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

In her complaint in this case, appellant Glenda Merwine alleges intentional sex discrimination against Mississippi State University (MSU) and members of its hiring committee under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq., and under 42 U.S.C. § 1983, respectively; she also alleges that the imposition of MSU's published entry-level requirement for a faculty librarian position—a Master of Library Science degree from a school accredited by the American Library Association (ALA–MLS)—had an adverse impact

on women in violation of Title VII. Merwine's complaint arises from her unsuccessful application for a faculty librarian position with the Mitchell Memorial Library at MSU in 1980.

The action was tried before magistrate Charles Powers and a jury with stipulation that any appeal would be taken directly to this Court. 28 U.S.C. § 636(c). The jury found against appellee George Lewis, director of the Mitchell Memorial Library, and awarded Merwine $5,000 actual damages and $5,000 punitive damages for intentional sex discrimination in violation of § 1983.[1] Magistrate Powers took under advisement Merwine's claims against MSU under Title VII based upon the alleged disparate treatment of Merwine and the alleged disparate impact upon women of the ALA–MLS degree requirement. He then rendered a final opinion granting Lewis' motion for judgment notwithstanding the verdict and dismissing all other claims including those claims against MSU under Title VII. Merwine duly perfected this appeal.

Merwine challenges the magistrate's grant of judgment notwithstanding the jury's verdict against Lewis. Preliminarily, though, she contends that Lewis' failure to move for a directed verdict at the close of all the evidence precluded the magistrate from addressing Lewis' later motion for judgment notwithstanding the verdict. Finally, she contends that the magistrate's determination that she had failed to establish her Title VII claim of disparate impact was clearly erroneous. For the reasons that follow, we affirm.

## I. *Facts*

In 1978 MSU imposed as a requirement for employment in the faculty position of librarian the holding of an ALA–MLS degree. In November 1979, MSU advertised in various national library publications a vacancy in the faculty position of branch librarian of the College of Veterinary Medicine. Not having filled the position, MSU readvertised in various national publications in April 1980. In each of the advertisements an ALA–MLS degree constituted the published entry-level educational requirement. The attorney for Merwine conceded at oral argument before this Court that the advertisements for the position Merwine sought did not state that the entry-level requirement was an ALA–MLS *or its equivalent.* As a result of each of the advertisements, applications were received from across the nation.

Merwine, a thirty-three year old white female, filed her application for the position in May 1980. Thereafter all applications were considered by a search committee composed of one staff and one faculty member from the College of Veterinary Medicine and two female faculty members from Mitchell Memorial Library. Lewis served as chairman of the committee. Between May and August of 1980, the committee reviewed the applications and interviewed two applicants possessing the ALA–MLS degree and one applicant in the process of receiving her ALA–MLS degree. No applicant was interviewed who did not have the ALA–MLS degree. Merwine knew that the ALA–MLS degree was one of the minimum requirements before she applied. Because Merwine did not possess this degree, her application was not considered further. Subsequently, MSU hired a male applicant who did possess the ALA–MLS degree.

During the period in which applications were considered, Merwine was in the process of receiving a Masters of Education Degree with a major in Secondary Education. She testified, however, that her degree should have been termed a "Master of Education with Major in Secondary Educa-

---

**1.** Title 42 U.S.C. § 1983, in pertinent part, provides:

    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

tion, Library Science" as planned out with the professor. MSU introduced ·evidence, however, that it does not offer a Masters in Library Science, accredited or unaccredited, and does not have a graduate degree in library science of any kind. MSU also offered uncontradicted evidence indicating that eighty to ninety percent of all college and university libraries require the ALA–MLS degree as an entry level requirement for professional-faculty level librarians.

MSU introduced statistics relevant to the disparate impact claim indicating that of the Master of Library Science degrees conferred in this country over the past fifteen years, seventy-nine percent of the ALA–MLS degrees have been conferred upon women, the remaining twenty-one percent upon men. Merwine, however, introduced statistical evidence of the respective percentages of females and males possessing the ALA–MLS degree who applied for professional librarian positions at MSU from 1971 to 1977. Her statistics indicate that 54 percent of the female applicants possessed the ALA–MLS degree while 89 percent of the male applicants possessed the ALA–MLS degree. Thus, she argues, imposition of the degree requirement in 1978 selects out or preempts a much larger percentage of women than men. These statistics form the basis for Merwine's disparate impact claim.

## II. *Was Judgment N.O.V. Properly Entertained?*

Defendant Lewis failed to move at the close of all evidence for a directed verdict on Merwine's claim of intentional sex discrimination under § 1983. Accordingly, Merwine contends that Fed.R.Civ.P. 50(b) precluded the district court and now precludes this Court from entertaining Lewis' motion for judgment notwithstanding the verdict. Merwine urges strict adherence to form in complying with Rule 50(b). In *Bohrer v. Hanes Corp.*, 715 F.2d 213 (5th

Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984), however, we noted agreement with the Seventh Circuit's pronouncement that although

> [i]t is certainly the better and safer practice to renew the motion for directed verdict at the close of all the evidence, ... "[t]he application of Rule 50(b) in any case 'should be examined in the light of the accomplishment of [its] particular purpose[s] as well as in the general context of securing a fair trial for all concerned in the quest for truth.'"

*Id.* at 217 (quoting *Bonner v. Coughlin,* 657 F.2d 931, 939 (7th Cir.1981)). In *Villanueva v. McInnis,* 723 F.2d 414, 417 (5th Cir.1984), we recently restated two purposes of Rule 50(b):

> to enable the trial court to re-examine the question of evidentiary insufficiency as a matter of law if the jury returns a verdict contrary to the movant, and to alert the opposing party to the insufficiency before the case is submitted to the jury, thereby affording it an opportunity to cure any defects in proof should the motion have merit.

Lewis argues that the facts of this case are similar to those of *Bohrer* where we excused defendants' technical noncompliance with Rule 50(b) and that the holding in *Bohrer* should apply as well here. We agree.

In *Bohrer,* defendants moved for directed verdict at the close of plaintiff's evidence and the motion was expressly taken under advisement by the court. After the defendants had introduced evidence damaging to plaintiff, the plaintiff offered no rebuttal evidence; further, the defendants did not renew the motion at this time. Similarly, Lewis moved for a directed verdict against Merwine at the close of her case.[2] While this motion was denied, Mer-

---

2. Merwine contends that the motion for directed verdict at the close of plaintiff's proof was addressed solely to the Title VII claims and not to the § 1983 claim against Lewis. We are convinced, however, that motions for directed verdict were made both to the Title VII claims

tried by the court and to the § 1983 claim tried by the jury. While Lewis' motion did not specifically refer to the § 1983 claim, he did cite, in furtherance of his motion for directed verdict, the lack of evidence to prove *elements* of the § 1983 claim. Moreover, when the motions

wine was alerted to a possible deficiency in her proof by the court's statement that it would "overrule the motion at this time and allow the proof to be further developed by the defendants." In addition, Lewis' motion was renewed toward the end of the jury trial and taken under advisement at that time by the court. Finally, as in *Bohrer*, after the motion was taken under advisement, Lewis called two defense witnesses and concluded all the evidence; Merwine then failed to offer any rebuttal evidence. On the record here the accomplishment of the purposes of Rule 50(b) have been fully met. *See Villanueva, supra.* Because we believe that our decision in *Bohrer* controls this issue, we excuse any arguable noncompliance by Lewis with the requirements of Rule 50(b) which might constitute a bar to the consideration of his motion for judgment notwithstanding the verdict.

Our holding is further bolstered by the fact that Merwine did not object or complain when the trial court continued to act on other motions to dismiss that the court had taken under advisement. The court dismissed two defendants after taking the renewed motions to dismiss under advisement, and retained the motions to dismiss from the two remaining defendants, Lewis and Miller. This conduct by the court, at the time the case was submitted to the jury, indicates that it was aware of potential evidentiary problems with Merwine's § 1983 claim. *See Jack Cole Co. v. Hudson,* 409 F.2d 188, 191 (5th Cir.1969) (citing

*Roberts v. Pierce,* 398 F.2d 954, 956 (5th Cir.1968)). In addition, Merwine's awareness of the pendency of these motions indicates an awareness of potential problems of evidentiary sufficiency with the § 1983 claim against Lewis. We are convinced no surprise was effected upon Merwine and that the purposes of Rule 50(b) have been served. To require Lewis in this case, to articulate the words of renewal at the close of all the evidence, under the circumstances here, would be "to succumb to a nominalism and a rigid trial scenario as equally at variance as ambush with the spirit of our rules." *Bohrer v. Hanes Corp., supra* at 217 (quoting *Quinn v. Southwest Wood Products, Inc.,* 597 F.2d 1018, 1025 (5th Cir.1979)).

### III. *Intentional Sex Discrimination*

In Merwine's § 1983 claim against Lewis for intentional sex discrimination, the jury specifically found in response to special interrogatories that Merwine was qualified for the job at issue, but that she had been denied the job because of favored treatment of Bruce Evans, a male applicant. Evans, who possessed the ALA–MLS degree but was in other respects unqualified, was nevertheless hired. The magistrate entered judgment notwithstanding the verdict on this claim after determining that no reasonable jury could conclude that Merwine was qualified for the position. He concluded, therefore, that Merwine had failed to prove a prima facie case of sex discrimination under § 1983.[3]

---

were renewed, the district court stated, "I am not prepared to grant your motions [for directed verdict] ... [a]s to the claims against Drs. Lewis and Miller." Thus, we find no merit to Merwine's contention on this point.

**3.** When a § 1983 claim is used as a parallel to a Title VII claim under a given set of facts, the elements required to be established for each claim are deemed the same under both statutes. *Rivera v. City of Wichita Falls,* 665 F.2d 531, 534 n. 4 (5th Cir.1982) (citing *Whiting v. Jackson State University,* 616 F.2d 116 (5th Cir.1980)). Accordingly, this Circuit has held that the standards enunciated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), for establishing a prima facie case in a Title VII employment discrimina-

tion action "presents a logical and appealing application in ... 1983 cases." *Ramirez v. Sloss,* 615 F.2d 163, 168–69 (5th Cir.1980), *quoted in Lee v. Conecuh County Board of Education,* 634 F.2d 959, 962 (5th Cir.1981). Under *McDonnell* the criteria for establishing a prima facie case of employment discrimination are: (1) that plaintiff belongs to a protected class; (2) that plaintiff was qualified for a position for which the defendant was seeking applicants; (3) that despite being qualified, the plaintiff was rejected; and (4) the position remained open and the employer continued to seek applications from persons of plaintiff's qualifications. 411 U.S. at 802, 93 S.Ct. at 1824; *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The magistrate further determined that even if Merwine could be deemed qualified for the position, no reasonable jury could conclude that Lewis' stated reason for not hiring Merwine—her lack of an ALA–MLS degree—was pretextual.

Merwine contends that the magistrate's entry of judgment notwithstanding the verdict was error because there was substantial evidence to support the jury's finding that Merwine was qualified for the position. She quotes extensively from the record for the proposition that her educational background was the equivalent of an ALA–MLS degree. Merwine further contends that Lewis' preference for and adherence to the degree requirement, knowing she possessed its equivalent, and his preference for an otherwise unqualified male applicant, Evans, constituted substantial evidence supporting the jury's implicit finding that his insistence upon the degree requirement was pretextual.

### A. Standard of Review

Our recent holding in *Lyford v. Schilling,* 750 F.2d 1341 (5th Cir.1985) (per curiam), recites the standard of review applicable to a Title VII case that, as here, has been tried on the merits. *Id.* at 1344. In *Lyford,* we stated

> [t]he three-step analysis of *prima facie* case, rebuttal, and showing of pretext defined by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), is not the proper method of evaluating [a Title VII case that has been fully tried on the merits]. *Williams v. Southwestern Bell Telephone Co.,* 718 F.2d 715, 717 (5th Cir. 1983); *see e.g. Wall v. National Railroad Passenger Corp.,* 718 F.2d 906, 908–09 (9th Cir.1983). As the Supreme Court stated in *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983):
>
> > [w]hen the defendant fails to persuade the district court to dismiss the action

for lack of a *prima facie* case, and responds to the plaintiff's proof by offering evidence of the reason for plaintiff's rejection, the fact finder must then decide whether the rejection was discriminatory within the meaning of Title VII. At this stage, the *McDonnell-Burdine* presumption "drops from the case," and "the factual inquiry proceeds to a new level of specificity." The "factual inquiry" in a Title VII case is "whether the defendant intentionally discriminated against the plaintiff." (citations omitted)

*Id.*

In another recent decision we stated that "[w]here, as here, the case has been fully tried on the merits, the adequacy of a party's showing at any particular stage of the *McDonnell Douglas* ritual is of no consequence. We are simply to determine whether the record contains evidence upon the basis of which a reasonable trier of fact could have concluded as the jury did." *Elliott v. Group Medical & Surgical Service,* 714 F.2d 556, 564 (5th Cir.1983) (footnote omitted). The ultimate issue, that of discrimination *vel non,* "is to be treated by district and appellate courts in the same manner as any other issue of fact." *Williams v. Southwestern Bell Telephone Co.,* 718 F.2d 715, 718 (5th Cir.1983) (citing *Aikens,* 103 S.Ct. at 1482).

Accordingly, our review is subject to the same standard as that standard guiding the magistrate's grant of judgment notwithstanding the verdict. In *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969) (en banc), we set forth the standard by which to judge the propriety of a grant of judgment notwithstanding the verdict:

> The Court should consider all of the evidence—not just that evidence which supports the nonmover's case—but in a light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a

contrary verdict, granting of a motion is proper.

*Id.* at 374, *quoted in Reeves v. General Foods Corp.,* 682 F.2d 515, 519 (5th Cir. 1982).

Paying particular attention to the standard of review dictated by *Aikens,* we turn to the evidence presented in the course of the trial of this case. In presenting their case below, and in their arguments before this Court, however, the parties have generally followed the *McDonnell Douglas* three-step format: prima facie case, rebuttal, and showing of pretext. Accordingly, while "it is necessary for us to discuss the elements of that format, our concern is not with the state of the evidence at any of its stages, but rather with the evidence in the case at large." *Elliott, supra,* at 565 (citing *Aikens, supra*).

### B. Qualification

The magistrate's determination that judgment notwithstanding the verdict was proper centers upon Merwine's failure to establish the second element (qualification for the position) of her prima facie sex discrimination in hiring case under Title VII. *See* note 3, *supra.* The evidence supports the magistrate's conclusion that no reasonable jury could have determined that Merwine was qualified for the position she sought. Merwine asserts that the MSU Promotion and Tenure Policy in effect required not an ALA–MLS degree, but an ALA–MLS degree "or its equivalent". As previously indicated, Merwine's counsel conceded that the ALA–MLS degree only, not the ALA–MLS degree or its equivalent, was the stated minimum educational re-

quirement for the position which Merwine sought. In addition, the notices advertising the position did not include the language "or its equivalent." Further, Merwine admitted that Lewis, upon her initial inquiry, had informed her of the degree requirement and his strict adherence to the requirement.

█ Merwine introduced expert witnesses to inform the jury that her qualifications and experience were equivalent to the average qualifications and experience of an ALA–MLS degree holder. This evidence, substantial as it may be, fails to contradict or diminish in any way the simple, uncontested and stipulated fact that Merwine did not possess the published minimum educational requirement—the ALA–MLS degree—for the position of faculty librarian at MSU.[4] The conclusion that Merwine was not qualified for the position is indisputable and a jury verdict to the contrary could not have been reached by reasonable persons.[5] The magistrate's entry of judgment notwithstanding the verdict on Merwine's § 1983 claim was proper.

### C. Was the Qualification a Pretext?

Even if we accepted Merwine's contention that evidence supported the jury's finding that she was qualified for the position of branch librarian, thus establishing a prima facie case of sex discrimination, we believe the magistrate was correct in his determination that no reasonable jury could find that Lewis' preference for the ALA–MLS degree was pretextual. The legitimate, nondiscriminatory reason offered by Lewis and MSU for selecting Evans rather

---

**4.** Our holding does not entirely preclude Merwine from challenging the requirement. She has, more appropriately, asserted a claim of disparate impact under Title VII, alleging a discriminatory practice by virtue of the imposition of the ALA–MLS degree requirement itself. *See* part IV, *infra.*

**5.** Our conclusion is further bolstered by virtue of a mistaken assumption made on the part of the jury. The magistrate, referring to a note from the jury, stated to counsel:

Apparently they misunderstood plaintiff's testimony. They say that "the plaintiff testified

that the advertisement in which she found out about the job opening contained the phrase ALA–MLS *or equivalent.* Were there any documents entered supporting this? In other words, were copies of the advertisement entered into evidence?"

I think, as I recall the testimony, they are wrong in evaluating plaintiff's testimony. (emphasis added).

The magistrate correctly recalled that the advertisements listing the job vacancy did not include the phrase "or equivalent."

than Merwine was the fact that Evans held an ALA–MLS degree and Merwine did not. Merwine, however, has failed to produce evidence from which a reasonable jury could find that Lewis' preference for the ALA–MLS degree was a pretext.

■ Merwine contends that substantial facts justified the jury's implicit finding of pretext.[6] She asserts that Lewis' stated reason for not considering her was undermined by the fact that Evans, while possessing the ALA–MLS, did not possess other stated requirements.[7] The mere fact, however, that Evans did not possess other requirements does not lead to the conclusion or even to a reasonable inference that Lewis' adherence to the ALA–MLS degree requirement in Merwine's case was pretextual.

■ Merwine also contends that because of Lewis' long tenure with MSU and his familiarity with the degree held by Merwine, Lewis must have known that Merwine possessed expertise equivalent to ALA–MLS degree holders. She concludes that the jury could then infer that Lewis' decision not to hire her stemmed from a discriminatory motive and not from her lack of the ALA–MLS degree. No facts presented by Merwine, however, justify the conclusion that Lewis must have known of the relative equivalence of Merwin's degree to the ALA–MLS degree; accordingly, we believe it would be unreasonable for a jury to draw such a conclusion from the record.

Merwine further contends that the jury could draw inferences of pretext from the fact that Evans was unqualified but nevertheless hired and from the fact that Lewis declined to change his hiring decision even though the grievance committee chairman had requested him to hold Evans' application in abeyance. While the jury might draw an inference of Lewis' favoritism toward Evans, this evidence does little, if anything, to indicate a pretextual adherence to the ALA–MLS degree in order to discriminate against Merwine because of her sex.

■ The evidence presented by Merwine, with all reasonable inferences drawn in her favor, does not persuade this Court that Lewis' adherence to the ALA–MLS degree requirement was pretextual. All the evidence, viewed favorably to Merwine, points without hesitation to the opposite conclusion. The uncontradicted evidence establishes that the ALA–MLS degree is a legitimate nondiscriminatory standard for hiring academic librarians. It is a standard widely recognized and utilized by academic and professional employers, including the United States Supreme Court. In addition, as the parties stipulated, at the time Merwine's application was under consideration, six applications were before the hiring committee. Three of the applicants, two females and one male, possessed the required degree and only these three were interviewed for the position. None of the applicants without the degree was even considered. Lewis' uniform application of the degree requirement is indicative that his denial of Merwine's application for the same reason was not pretextual in nature. More importantly, Evans applied two months *after* Merwine's application was denied because she lacked the ALA–MLS degree. As a consequence, it strains logic to infer that Lewis' later preferential treatment of Evans, if any, led to or influenced any pretextual adherence to the ALA–MLS degree in earlier refusing to hire Merwine.

We agree with the magistrate's finding that no reasonable jury could find that the preference for such a degree was a pretext in view of the total lack of any credible evidence indicating the preference for such a degree was not a legitimate, nondiscriminatory factor uniformly applied to all applicants. Accordingly, we hold that the mag-

---

**6.** The special interrogatories submitted to the jury did not directly address the question of pretext; however, we will assume that the jury's finding—that Merwine was not hired because of preferential treatment of Evans—encompassed the implicit finding that Merwine was not hired because of her sex and not because she lacked the ALA–MLS degree.

**7.** Evans did not possess the required background in biomedical and natural sciences.

istrate did not err in granting judgment for Lewis notwithstanding the jury's verdict.

## IV. *Disparate Impact*

Merwine's alternate claim under Title VII is that MSU's imposition of the ALA–MLS degree requirement constituted impermissible sex discrimination because the requirement effected a disparate impact upon women. In support of her claim, Merwine introduced statistical evidence from a pool of applicants for professional librarian positions at MSU from 1971 to 1977. The magistrate rejected these statistics and found that Merwine had failed to prove a prima facie case of disparate impact. Merwine contends that the magistrate's finding was clearly erroneous. Our review of the magistrate's memorandum decision leads us to conclude that even if Merwine had statistically made out a prima facie case of disparate impact, the ALA–MLS degree requirement was justified as a business necessity.[8]

■ Our analysis of the disparate treatment issue reveals that the stumbling block in Merwine's claim was her inability to prove that Lewis' preference for the ALA–MLS degree was pretextual. Similarly, we believe the magistrate's holding that Merwine failed to establish her disparate impact claim impliedly included the finding that the ALA–MLS degree had a manifest relationship to the employment position at issue here.[9] We decline to hold that this finding was clearly erroneous. *Wild v. Lykes Bros. S.S. Corp.*, 734 F.2d 1124, 1125 (5th Cir.1984).[10]

Merwine contends that overwhelming evidence supports the conclusion that the ALA–MLS requirement has no manifest relationship to the position of librarian of the College of Veterinary Medicine at MSU. In support of this contention, she directs our attention to the testimony of her expert witnesses indicating that the ALA–MLS degree is not a legitimate minimum educational qualification for professional librarian positions. The expert witnesses premised their conclusions primarily upon a stipulation that "nonALA–MLS degree holders at Mitchell Memorial Library of Mississippi State University perform equally well as ALA–MLS degree holders at Mitchell Memorial Library." Dr. McComas, president of MSU, however, testified that the position at issue is an entry level position. The stipulation concerning current employees at Mitchell Memorial Library does not necessarily lead to the conclusion that at the entry level, nonALA–MLS degree holders would perform equally well as ALA–MLS degree holders.[11] Further, there is evidence in the record that an accreditation standard is particularly appropriate to ensure not only that the applicant has received appropriate instruction and exper-

8. Accordingly, we decline to address the issues raised by both parties concerning the relevant statistical labor pool to be addressed.

9. In *Connecticut v. Teal*, 457 U.S. 440, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982), the Supreme Court stated that

a plaintiff must show that the facially neutral employment practice had a significantly discriminatory impact. If that showing is made, the employer must then demonstrate that "any given requirement [has] a manifest relationship to the employment in question," in order to avoid a finding of discrimination. Even in such a case, however, the plaintiff may prevail, if he shows that the employer was using the practice as a mere pretext for discrimination.

*Id.* at 446, 102 S.Ct. at 2531 (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971)). Our analysis of the disparate treatment issue indicates that the magistrate resolved the question of pretext based on the degree requirement in favor of Lewis and MSU. Accordingly, we need only address the issue of the relationship between the degree requirement and the employment position at issue.

10. A finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

11. Merwine also refers us to testimony that faculty librarians at MSU who did not possess the ALA–MLS were promoted while some librarians with the required degree were not. Similarly, this testimony alone does not necessarily indicate that a business necessity does not exist for imposing the degree as a minimum educational requirement for entry-level positions.

tise but also that the institution from which the applicant has graduated fulfills recognized, objective academic standards.

Merwine also contends that since MSU prior to 1978 had not utilized the ALA–MLS as a minimum degree requirement, "there has simply got to be a feasible alternative to such a hard and fast requirement." We understand Merwine to argue from this fact that even though the ALA–MLS degree might bear some relationship to the position of librarian of the College of Veterinary Medicine, because a feasible alternative must exist, the degree requirement can not bear a "manifest" relationship to the employment in question. *See Teal, supra,* 457 U.S. at 446, 102 S.Ct. at 2530–2531. Merwine fails, however, to point to the feasible alternative she suggests must exist. In addition, the mere fact that MSU had prior to 1978 been operating under a different procedure—ostensibly a less objective one—does not preclude the imposition nor necessity of an educational entry-level requirement to meet the needs of a growing and changing university system.

The evidence Merwine offers to support her contention that the ALA–MLS degree can not be justified as a business necessity does not lead us to conclude "with a definite and firm conviction that a mistake has been committed." *United States Gypsum Co., supra.* Rather, the evidence we have adduced from the record leads us to believe that the magistrate's finding that Merwine failed to prove her disparate impact claim was correct.

As the magistrate found during the course of his analysis of the disparate treatment issue, "the evidence clearly establishes that the degree is a standard widely recognized by academic and professional employers...." In addition, uncontested evidence indicates that approximately eighty percent of college and university libraries require that applicants for library faculty positions possess the ALA–MLS degree. Further, there was testimony that on average the ALA accredited MLS degree holder, as opposed to nonaccredited

degree holders, exhibits a noted superiority in reliability and dependability to the hiring library. Accordingly, sufficient evidence supports the magistrate's determination that a manifest relationship exists between the degree requirement and the position of librarian of the College of Veterinary Medicine at MSU.

The degree requirement was imposed in 1978 to upgrade the quality of potential applicants and to ensure that future applicants possess the minimum, desired qualifications. Merwine asserts, however, that a minimum degree requirement will create an artificial barrier to employment for those few who might perform better than an applicant with an ALA–MLS. Thus she contends, the degree requirement may potentially downgrade the MSU library system. Notwithstanding the lack of evidentiary support for Merwine's contention, we believe that the magistrate as trier of fact is the proper party to resolve these issues; and, as we believe that his findings were not clearly erroneous, we conclude that no error was committed.

The ALA–MLS degree requirement is further justified, as a business necessity, in light of evidence indicating that an otherwise subjective standard for entry level applicants would impose an unreasonable burden on MSU. Merwine's expert witness testified that if he were running a university library with only fulltime university people for volunteer search committee duties, he would have to weigh the choices between subjective requirements and an objective degree requirement. Dr. McComas also testified that the university lacks the resources to properly ensure that minimum standards are maintained in the selection of faculty personnel. He further testified that a review by disinterested professionals of the institutions from which applicants have graduated also ensures the reliability of the quality of the sponsoring insticutions' educational programs.

While administrative convenience alone does not validate MSU's imposition of the degree requirement, we believe that MSU's preference for an objective degree require-

ment that is widely recognized by academic and professional employers and that is required by approximately eighty percent of college and university libraries is supported as a valid business necessity. Our review of the record indicates that the magistrate was not clearly erroneous in concluding that the ALA–MLS degree requirement had a manifest relationship to the position Merwine sought.

For the foregoing reasons, the judgment rendered below is AFFIRMED.