United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 5, 2005**

Charles R. Fulbruge III
Clerk

REVISED APRIL 26, 2005

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 04-60523
Summary Calendar

_____

DOUGLASS S. CLEMENTS,

                                                                    Plaintiff-

Appellee,

versus

FITZGERALD'S MISSISSIPPI, INC; ET AL,


Defendants,

BARDEN MISSISSIPPI GAMING LLC, doing business as
Fitzgerald's Casino/Hotel Tunica

                                                    Defendant - Appellant.


_____

Appeal from the United States District Court
For the Northern District of Mississippi
(No. 2:02-CV-302-P-B)

_____


Before GARZA, DeMOSS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]


_____

[*] Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

I.

Douglas Clements, a white male, was, until December 7, 2001, the head of human resources for Fitzgerald's Casino/Hotel's Tunica, Mississippi-based casino. On that date, the ownership of the Tunica facility passed from Fitzgerald's to Barden Mississippi Gaming L.L.C. ("Barden"). Barden's owner and sole shareholder is Don Barden, a black male. Despite an agreement between Fitzgerald's and Barden that a certain group of Fitzgerald's employees would be hired by Barden on that date—a group that the parties concede includes Clements—Barden refused to hire Clements. At the time of his "firing," Clements had been in the employ of Fitzgerald's for two years, and had fourteen years of experience in the human resources field.

Clements was replaced at his position with Tami Tolliver, a black female. Tolliver's husband, Kevin Tolliver, was also hired by Barden's to be its Slot Director. Neither Tolliver had the requisite experience for their respective positions.

Clements brought this Title VII action against Barden, alleging that he was the victim of racial discrimination in connection with an adverse employment action. At a bench trial, the district court found the following relevant facts: that during a January 2001 meeting between Clements and key Barden officials, Chief Operating Officer Michael Kelly, Vice President of Finance and Administration David Wolf, and Corporate Vice President Jeff Bauer, these officials concluded that Clements was "bland" and "boring"; that Clements was told in October, 2001, that he would lose his job "because of Barden Gaming's desire to 'diversify'"; that Don Barden publicly stated that "if you look at our wall of managers here you'll see all white males . . . so we're gonna [sic] have more women as managers and more African Americans as managers." Finally, the court ruled that, as a matter of law, because of the contract between Fitzgerald's and Barden, Barden was legally obligated to provide

2

employment to Clements, "mak[ing] any reason given not to hire the plaintiff illegitimate." The court determined that Barden was liable to Clements for the unlawful "firing," and awarded Clements roughly $32,000 in backpay, $20,000 in emotional damages, and $260,000 for punitive damages. Barden appeals that decision.

## II.

"Where, as here, the case has been fully tried on the merits, the adequacy of a party's showing at any particular stage of the *McDonnell Douglas* ritual is of no consequence." *Merwine v. Bd. of Trustees for State Institutions of Higher Learning*, 754 F.2d 631, 636 (5th Cir. 1985). Rather, "[t]he ultimate issue, that of discrimination *vel non*, 'is to be treated by . . . appellate courts in the same manner as any other issue of fact." *Id.* (quoting *Williams v. Southwestern Bell Telephone Co.*, 718 F.2d 365 (5t h Cir. 1969)). Thus, as an issue of fact, we review the district court's finding of discrimination for clear error only. *See, e.g.*, *Arbaugh v. Y&H Corp.*, 380 F.3d 219, 225 (5th Cir. 2004). Any conclusions of law are reviewed under a *de novo* standard. *Id.* at 226.

## III.

Barden challenges both the decision regarding liability and the damages award. Each is discussed in turn.

## A.

Under a clearly erroneous standard, this Court is not entitled to "[r]everse the finding of the trier of fact simply because [we are] convinced that [we] would have decided the case differently." *Matter of Webb*, 954 F.2d 1102, 1104 (5th Cir. 1992) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573–74 (1985)). Barden argues that its refusal to hire Clements was proper because it was based on Barden's conclusion that Clements was "bland" and "boring." Moreover, Barden contends

that Clements was not qualified because he had been a salesman before his first human resources job, and that he had no degree in human resources.

It is uncontested that Barden replaced Clements, a manager with over fourteen years of experience, with someone with objectively less experience. Moreover, it is uncontested that Clements was, under the Fitzgerald's/Barden contract, to be hired by Barden. At most, Barden's arguments tend to show only an alternative version of events. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* (quoting *Anderson*, 470 U.S. at 573–74) (internal quotations omitted).

B.

"Absent an error of law, a district court's award of compensatory damages presents an issue of fact, subject to the clearly erroneous standard of review." *Rhodes v. Guiberson Oil Tools*, 82 F.3d 615, 620 (5th Cir. 1996). Barden argues that, under *Kolstad v. ADA*, "[a]n employer cannot be assessed punitive damages if it reasonably believes its discrimination is lawful." 527 U.S. 526, 537 (1999). Its "reasonable belief" is that, as noted above, Clements was "bland" and "boring."

Barden misapprehends *Kolstad*. As the Court made clear, "reasonable belief" speaks not to whether it was reasonable to *fire* someone, but rather whether it is reasonable to *discriminate* in making an employment decision. Thus, in that case, the Court noted that "an employer may reasonably believe that its discrimination satisfies a bone fide occupational qualification defense or other statutory exception to liability." *Id.* Barden offers no reason of that type. Accordingly, we reject its argument.

IV.

The decision of the district court is AFFIRMED.

4