Delores CUNNINGHAM, Plaintiff,

v.

The J.C. PENNEY
COMPANY, Defendant.

Civ. A. No. DC 83–232–GD–O.

United States District Court,
N.D. Mississippi, E.D.

Sept. 9, 1986.

Deborah Godwin, Memphis, Tenn., for plaintiff.

Peyton S. Irby, Jr., Jackson, Miss., Richard P. Shuey, Atlanta, Ga., for defendant.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

The plaintiff Delores Cunningham brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (Title VII), the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* (ADEA) and 42 U.S.C. §§ 1981, 1982 and 1988. Cunningham alleges that she has been discriminated against with regard to certain promotional opportunities on the basis of her race and age. The court, having heard this matter without jury, hereby records its findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

### Findings of Fact

The plaintiff is a 56 year old black female who has been employed with J.C. Penney Company, Inc. (Penney's) since 1966. The Penney's facility involved in the case *sub judice* is the Southaven, Mississippi[1] distribution center which employs approximately 188 people. The center is divided into two areas, the office and the warehouse. The office division consists of the following departments: the detail office, direct response, financial document and control (FDC), data processing and personnel and administration. Employer-employee relations in the warehouse division are governed by a collective bargaining agreement which does not apply to the office division where only approximately 43 employees, including supervisory employees, work. The non-managerial positions in the office division, in ascending rank, are general clerk, detail assistant, administrative detail assistant and unit head.

Cunningham testified that she began her employment with Penney's as a general clerk in 1966 and remained at that position until 1974. In 1967, Cunningham was transferred to Penney's distribution center in the company's facilities in Memphis, Tennessee. In 1974, there being only the non-managerial positions of general clerk and unit head, Cunningham was promoted to a unit head position in the shipping office in the warehouse division. She testified that she was responsible for three other employees and that her functions consisted primarily of warehouse type duties, though she did perform some office functions. Cunningham held this position until April 1975 when she was demoted to the position of general clerk. The parties agreed, by stipulation, that Cunningham's demotion was not a result of any problems with her performance. Rather, the testimony of Cunningham and Penney's witnesses reveal that the demotion occurred because Cunningham's employees had to be transferred because of a greater need for them elsewhere in the facility.

After her employees had been reassigned to other positions and Cunningham had been demoted to general clerk, she requested, and received, a transfer back to the office division because of medical problems, later determined to be tendonitis, that she was experiencing with her legs. Due to these problems, Cunningham's absenteeism record during this time-period showed 47 absences in a 12 month period, of which 22 days were categorized as being illness related. Cunningham was also tardy 14 times in that same 12 month period. As a result of her attendance, Cunningham received an overall performance rating for that year of four, on a scale of one to five, indicating that she met "minimum requirements only". However, subsequent appraisals reflect good punctuality and attendance by Cunningham. For example, in

---

1. Southaven is in De Soto County, Mississippi which is adjacent to Shelby County and Memphis, Tennessee.

February 1983, Cunningham was shown to have been absent only three times in the last 12 months and late only once in the same period. In her 1983 and 1984 appraisals, Cunningham received an overall performance rating of three, signifying that she "meets requirements". Her supervisor's comments in 1983 state that Cunningham had done a "thorough job" in keeping charges to a minimum, that she seemed to enjoy her work, that her overall attitude had shown a "noticeable improvement" and that her overall performance was good. In her 1984 appraisal, another supervisor remarked that Cunningham had a good knowledge of charge-back procedures and that he "expect[ed] her to perform well at her new duties." Besides the work experience gained by Cunningham in the office division prior to and subsequent to her promotion as a unit head in the shipping office in 1974, Cunningham also received a certificate in keypunch training when a keypunch system was implemented in her area shortly after she began her employment with Penney's. Cunningham also testified that she worked in the vitamin and direct response areas for short periods of time, was in charge of mail, parcel post and bills of lading while serving as unit head in the shipping office and has worked on freight, tonnage analysis, relieved on the switchboard and has worked on charge-backs and in customer service. Prior to her employment with Penney, Cunningham testified that she worked for a real estate company in which she served as resident manager, collecting agent and a bookkeeper in which she drew on courses that she had taken in bookkeeping and typing.

The plaintiff also introduced evidence of alleged past discriminatory acts directed at her by the defendant. For example, though Cunningham testified that she had been informed that she would receive the next available unit head position after she had been demoted to general clerk, the defendant promoted Peggy Childers, a white female under the age of 40, to a unit head position in the shipping office shortly after Cunningham's demotion. Cunningham also offered the testimony of Dan

Jackson, a retired foreman in the warehouse division, to rebut Penney's witnesses who testified that Penney's policy that a unit head position would not exist unless the unit head had at least two employees to supervise. Jackson testified that when he had been employed with Penney's, that he had known of unit head positions with less than two employees per unit. Jackson further testified that these positions were held by two whites in the auditing and response areas of the company.

As evidence of the defendant's discriminatory actions taken against its black employees in general, Cunningham offered the testimony of Frankie Knox, a black unit head in data processing and Linda O'Bannon, a former Penney employee. Knox testified that of the seven or eight black employees in the office division, five of those employees worked under her in the data processing area. Knox testified that although the keypunch employees once had the highest paying jobs, that as a result of the engineering analysis conducted, the keypunch employees' salaries had been cut and that they were now among some of the lowest paying jobs in the office division. Knox also testified that she had only found out about available positions "though the grapevine". Linda O'Bannon, employed by the defendant from approximately 1971 through 1980 in the detail office as a keypunch operator, also testified that she learned of available positions by word of mouth. She testified as to two instances wherein she believed that she had been discriminated against on the basis of age and race. O'Bannon testified that a white female, one to two years younger than herself, Linda Fugitt, had been promoted over her even though she had more seniority. O'Bannon further testified that she did not know of the available position until after she had heard that Fugitt had received it. O'Bannon stated that her supervisor at the time had been a white male. The other instance testified to by O'Bannon was the promotion of Brenda Crawford, a younger white female, to a position in FDC. O'Bannon testified that she had heard of

this position and had applied for it. When she discovered that Crawford had received the promotion, she inquired of the supervisor in FDC at the time, Steve Henley, why she had not received the position. Henley allegedly stated that it was because Crawford had experience with books. O'Bannon testified that she too had accounting experience and had kept the books for her husband's business for a number of years.

Since Cunningham's 1980 promotion to detail assistant, she has received no other promotion although, by stipulation, she is the most senior employee in the office division of Penney's distribution facility in Southaven, Mississippi. Penney's justification for its failing to promote Cunningham to any other positions is that the plaintiff, at the time of the promotion decisions, was less experienced than those other employees promoted to the positions and that she did not "get along" as well with other employees who had the same amount of leadership ability. Presently, Cunningham is involved in a cross-training program designed to expose her to a number of different areas in which she has not previously worked. Plaintiff testified that the mandatory cross-training program now in operation had been, until recently, only a voluntary program where the employees could work at other positions only with the approval of their all white supervisors.

The plaintiff contends that she was qualified for the following promotions given to white females under the age of 40. These promotions are: (1) Pam Stark, promoted to unit head in the detail office in 1979; (2) Sheila Clifton, promoted to unit head in the detail office in November 1980; (3) Pam Stark, promoted to supervisor in the detail office in 1980; (4) Cheryl Plunk, promoted to administrative secretary in 1981; (5) Margaret Samples, promoted to unit head in August 1982; (6) Pam Diana, promoted to unit head in direct response in November 1982; (7) Sandra Cooper, promoted to unit head in the detail office in August 1983; (8) Sheila Clifton, promoted to supervisor in the financial document control area (FDC)

in August 1983; (9) Cheryl Plunk, promoted to unit head in personnel and administration in September 1983; (1) Margie Klinger, promoted to unit head in the detail office in February 1984; (11) Sarah Splawn, an "upgrade" to administrative detail assistant in the detail office in February 1984; (12) the "upgrade" to administrative detail assistant in personnel and administration in 1984 awarded to Brenda Crawford; (13) and the "upgrade" of Pattie Baier to the position of administrative detail assistant in personnel and administration in September 1983.

The defendant contends that the individuals promoted to the various positions had generally worked in those areas and thus had superior qualifications. However, a number of the promoted individuals had been counseled for excessive absenteeism and tardiness, and Diana, Cooper and Splawn have either been demoted or placed on probation since the date of their promotions. Further, several promotions have taken place even though the individuals had not worked in the areas in which they were promoted. For example, Sheila Clifton was promoted to the position of supervisor in FDC even though she had not previously worked in that area. Margie Klinger received the position of unit head in the personnel department even though she had not worked in the personnel or administration area. Moreover, Cunningham had experience in certain of the areas in which the promotions occurred though evidence of her serious consideration for the openings is not reflected in the testimony or the record. For example, although Cunningham had experience in the direct response area, Pam Diana received the promotions to detail assistant in direct response, and shortly thereafter, to unit head in direct response, even though Diana's personnel record reveals that she has had intermittent absenteeism problems and that she underwent a period of "self-withdrawal" according to her December 1980 annual review.[2] Cunningham has also had previ-

---

2. Diana had, however, accepted a lateral transfer to direct response prior to her promotion.

ous experience in the detail office. Yet, even though Sandra Cooper was counseled regarding her absenteeism in 1977, 1980, 1981 and 1982, Cooper received the promotion to unit head in the detail office in October 1983. Both Diana and Cooper have since been counseled for absenteeism.

The plaintiff offered testimony to the effect that the skills required for most of the jobs in the office division do not significantly vary from job to job. Besides the plaintiff's testimony to this effect, Juanita Kyle, who retired from Penney's in 1981, testified that the skills necessary for a position in FDC, for example, do not really differ from those skills required in the detail positions. Dan Jackson likewise testified that the skills required for office versus warehouse positions were essentially the same. Further, Sharon Sills, former personnel manager for Penney's, testified in her deposition that the skills required of a detail assistant in direct response and the skills required of someone in the same position in the detail office are the same. (Sills' deposition, p. 25).

Kyle also stated that Cunningham's work performance was in no way substandard and that, in her opinion, Cunningham related to other employees "extremely well" and testified to incidences of harassment committed on the plaintiff by other employees as examples of the plaintiff's self-control. For example, Kyle testified that some of the employees once put a note on the plaintiff's back reading "kick me" and often put tacks in the plaintiff's chair. Dan Jackson, who also worked with Cunningham, also testified that she did good work. The only testimony to the contrary was that of Steve Henley, the defendant's office supervisor from October 1980 until July 1982. Henley testified that he observed one incident where there was a considerable amount of unpaid freight bills for which Cunningham was responsible but, on cross, Henley stated that Juanita Kyle had been at least partially responsible for the freight bills.

In defense of its promotion selections, Penney's offered the testimony of Steve Henley, office supervisor of the Southaven plant until July 1982; Bill Spangler, facility manager or distribution center manager at the Southaven facility in 1979; Sharon Sills, who served as office manager, personnel manager and warehouse services manager; and Howard Fortsch, distribution center manager or facility manager at the Southaven facility in 1982. These witnesses all testified that openings in the office division were not posted but that the employees who received notification of the positions learned of them through their supervisors. The parties further stipulated that administrative detail assistant, unit head and supervisor openings were neither posted nor announced in any formal fashion. The supervisors, as testified to by Sharon Sills, would go to individuals or certain groups and tell them about an available position. The supervisors and personnel office recommended certain individuals and the other employees only learned of the opening after someone had already been selected for the position. Howard Fortsch further testified that the procedures for promotion were not posted and that the only qualifications described for the jobs were in job descriptions. Fortsch, who made the majority of the promotion selections, testified that he did not review the files personally except files of some of those people recommended by the supervisors or personnel office. Though he stated that all employees were considered for the promotions and assumed to be interested in obtaining a promotion, his testimony indicated that he was not fully informed on all of the abilities and qualifications of the office employees. For example, Fortsch admitted that he was unaware that Cunningham had had prior accounting experience though he stated that he had seen the plaintiff's personnel file. Bill Spangler testified that in making his promotion deci-

---

Cunningham, though offered the transfer, testified that she turned it down because she was told by Sharon Sills, personnel manager at the time and her supervisor, Pam Stark, that promotional opportunities in that area were limited.

sions, he relied largely on feedback from the personnel office and supervisors and that he only interviewed those employees deemed qualified after file reviews by the supervisors and personnel department employees.

The testimony of the witnesses also reflected that, for several promotions, Cunningham's file had not been considered by them. For example, Spangler conceded that Cunningham's file was not among those considered for the promotion given to Cheryl Plunk in the spring of 1981 to the opening of administrative secretary. Spangler also testified that though previous work in a specified area was helpful for one desiring a promotion, such experience was not a prerequisite. Fortsch, Henley and Spangler testified that they made their promotions believing that those promoted were better qualified than the plaintiff. Though the individuals promoted all had less seniority than Cunningham, the defendant's witnesses testified that those promoted generally had more experience in the particular area in which they were promoted than did Cunningham and that this was the main basis for their promotion decision. They also testified that leadership ability, a good attitude and the ability to get along with others were also important considerations. Yet, none of the witnesses testified that Cunningham was deficient with respect to any of these qualities but only stated that they felt the individuals promoted, either because of their experience alone or in combination with these other personality factors, were better choices for the positions.

On cross-examination, however, Sills and Fortsch conceded that some of those individuals who had received the promotions experienced disciplinary action both prior and subsequent to their promotions for absenteeism. For example, Sills testified that Pam Diana, who had been counseled for her absenteeism several times prior to her promotions to detail assistant and later to unit head in the direct response area, was disciplined for another bout of absenteeism in 1985. Fortsch testified that Diana, who had been promoted from general clerk to detail assistant and then to unit head in about a six month period, was experiencing an "attitude problem" when he was at Southaven and that she had been demoted from her unit head position. Fortsch also testified that Sandra Cooper, who received a by-pass specialist position in 1982 and an unit head position in the detail office on October 3, 1983, had always had a poor absenteeism record and that, just prior to her unit head promotion, Cooper had received a written warning with regard to her excessive tardiness. Cooper's file reveals that though she did good work, her past absenteeism record was "horrible" and that as late as March 9, 1984, Cooper was still being counseled concerning her poor attendance record. Fortsch also conceded that Sarah Splawn, who became administrative detail assistant in the detail office in February 1984, was on probation when he left Penney's. Her record includes reports that her "weak area" is in inter-personal relationships and that she had an attitude that came across to her peers as a "I know but *why* don't you." (emphasis original).

Besides this anecdotal evidence, the plaintiff also introduced statistical evidence. Of the 188 people employed in Penney's Southaven distribution center, 145 of them work in the warehouse division. Of these, approximately 50% are black and about one-half of the unit head positions are occupied by blacks. Of the approximately 43 employees in the office division, where Cunningham works, only seven of the employees are black and there are no black administrative detail assistants, supervisors or managers. One black person, Frankie Knox, has attained the position of unit head. The standard metropolitan area statistics for the Memphis Metropolitan area, comprising part of Arkansas and De Soto County, Mississippi, for 1980 shows that approximately 33% of the labor force consisted of blacks whereas, in the office division of Penney's Southaven facility, only 16% of the persons employed are black.

Considering the testimony presented at trial, the court makes the following findings with respect to those promotions which Cunningham contends she should have received. Although the defendant argues that the first four promotions are barred by the relevant statutes of limitation, the court will assume for the purposes of making its fact findings that the four promotions, as well as the others, are not barred. Rather, the defendant's legal argument will be addressed in the court's conclusions of law.

The first promotion to which Cunningham claims entitlement is the promotion that Pam Stark received to unit head in the detail office in 1979. Stark was hired at the age of 20 in 1974 and at age 25, received her promotion to unit head in 1979. Stark was later promoted to supervisor in the detail office in 1980. At the time of Stark's promotion to unit head, she had not previously worked in the detail office according to her employment file. Though Cunningham did have experience in the detail office, the court finds that Stark's file reflects that she was an outstanding employee. She received glowing comments from her past supervisors, had only twice been counseled for absenteeism and from her letters contained in her file, it is clear that she is both intelligent and articulate. Accordingly, the court finds that Stark was more qualified than Cunningham for the promotions Stark received.[3]

The second promotion to be discussed is the promotion of Sheila Clifton to unit head in the detail office in November 1980. Clifton was hired in 1976 and originally worked as a general clerk in the detail office until 1980, when her position was reclassified to that of a detail assistant. Within a year thereafter, Clifton received a promotion to unit head in the detail office. Spangler and Henley testified that Clifton had broader experience in the detail area, worked well with others, had good attendance at the time and therefore, was better qualified overall for the job as compared with Cunningham. Clifton's personnel file reveals that she was an honor graduate from high school, that she received a Code 2, or "exceeds requirements" rating in 1976 and that she had the "ability to cope with many [often difficult] situations at one time without coming unglued...." The negative remarks made in her file include a need to concentrate on accuracy and attention to details, and on asserting her authority. From this evidence, the court finds that Clifton was better qualified for the promotion to unit head in the detail office.

Cunningham also contends that she should have received Pam Stark's promotion to supervisor in the detail office in 1980. In accord with its previous statements about Stark's outstanding personnel file, the court finds that Stark was better qualified for this promotion.

Cheryl Plunk received a promotion to administrative secretary in 1981. Henley testified that Plunk had better secretarial skills and that, to his knowledge, Cunning-

---

**3.** Indicative of Stark's superior qualities and of employee dissatisfaction with the management at Penney's, is a letter in Stark's file from Stark to Byron Peterson. Therein, she expressed to Mr. Peterson the reasons for her resignation, effective June 3, 1983. She states that she had recently been notified that much of her responsibility had been shifted to Mr. Lantz and Mr. Roger, because they purportedly did not "have enough responsibility to justify the PRL level and salary of their respective positions." She stated that she realized that any advancement potential had ceased to exist. Stark also complained of the removal by management of one of her unit heads while Stark had been away on vacation. Stark stated that she felt that the criteria used to judge the dismissed unit head were "unfair" and that any such ineffectiveness was the result of improper training and support the unit head had received when working for Sharon Sills, the personnel manager at the time. Stark also complained that she had seen Sills make false accusations against certain individuals "for the sport of it" and that she had also seen "management sweep the results of [Sills'] mis-management of 3019 shrinkage 'slush fund' and *PEOPLE* under a rug." Stark also warned of a potential sex discrimination problem in that Howard Fortsch was "constantly reminding us that a woman's place is at home". The court notes that these comments were made by an employee who received the highest of commendations from the defendants' witnesses at trial and from defendants' employees as reflected in Stark's personnel file.

ham had little typewriting abilities and no dictation skills. However, Spangler, who testified that Plunk's promotion was his decision, conceded that Cunningham's file was not among those considered. Plunk's file reflects that she had typing and business machines training although she admitted having no experience taking dictation. Plunk received an overall performance rating of Code 3, "meets requirements", in 1981 and her supervisor commented that Plunk's "reports, letters, mail distribution, phone calls had been handled in a timely and professional manner." Cunningham testified that she too had secretarial skills but on her employment application, Cunningham left blank those questions inquiring into her experience of filing, typing, stenography, ediphone and in clerical work in general. Accordingly, the court is of the opinion that the management's ignorance of any clerical skills Cunningham possessed should be borne by Cunningham because of her failure to indicate such skills in her application. The court finds, therefore, that Plunk was better qualified for the promotion to administrative secretary.

Cunningham contends that she should have received the promotion to unit head in FDC obtained by Margaret Samples in 1982. In the pretrial order, the parties stipulated that Samples had previously worked in FDC while Cunningham had not. Samples also had a B average in high school and received a scholarship to further her education after high school on the basis of her grades. Prior to her employment with Penney's, Samples had worked as a billing clerk and assistant bookkeeper with Automotive Jobbers in Memphis and had worked in the payroll department with another company in Memphis. Before becoming a unit head, Samples worked in FDC as a detail assistant as reflected in a 1977 performance review. Though her supervisor commented that she needed to work on her absenteeism, all other comments were to the effect, both in 1977 and in 1981, that Samples was doing a "good job" in her detail assistant position. After being demoted from unit head in the shipping office, Cunningham did not become a detail assistant until 1980. Since Samples had been employed in FDC from the date of her employment in 1974 and had served as a detail assistant in that area since 1976, the court finds that Samples was better qualified for the promotion to unit head than Cunningham. The court makes this finding in spite of testimony offered at trial that essentially the same skills were required in all areas of the office division. Though the court finds this testimony to be credible, it is of the opinion that Samples' eight years of experience that she had received at the time of her promotion to unit head in 1982 made her much more familiar with the particular procedures and practices utilized in FDC, even though all the areas required essentially the same skills.

Pam Diana was hired in 1974 and worked as a general clerk in charge of the switchboard until early 1982. In November 1982, Diana was promoted to a unit head position in direct response even though she had declined a lateral move to a position in the detail office in 1980. In 1980, Diana was counseled for "attitude" problems regarding her "self-withdrawal." Her record further reflects a steady problem with excessive absenteeism and performance ratings of "satisfactory" except for one performance rating of Code 2 indicating that her performance "exceeds requirements", in 1982. However, her performance in 1983 fell to a Code 3. Sharon Sills testified that Diana experienced another absenteeism problem in 1985 for which she was disciplined. Fortsch, who promoted Diana, testified that he did so because she had accepted a lateral transfer to direct response whereas Cunningham had declined the transfer when offered to her. Cunningham testified that she declined the offer because she had been told by her supervisor, Pam Stark, and the personnel manager at the time, Sharon Sills, that promotional opportunities in direct response would either be limited or non-existent. Fortsch admitted that Diana went from a general clerk in the detail area to a unit head position in direct response in about a six

month period and further conceded that Diana has again withdrawn from her work and has another problem with her attitude. Fortsch further testified that Diana had been demoted when he left employment with Penney's and was no longer a unit head.

Considering the personnel files and the testimony presented at trial, the court is of the view that Cunningham was better qualified for the promotion to unit head in direct response received by Diana in 1982. Though Diana received a Code 2 rating in 1982, her ratings both prior to and subsequent to this promotion were no better than Cunningham's ratings. Further, Cunningham has had an excellent absenteeism record essentially since 1976. In 1980, shortly before Diana's promotion, Cunningham received ratings of "better than satisfactory" on all criteria except a "satisfactory" rating on the criteria of appearance and neatness of work. Further, when Diana was still a general clerk in 1981, Cunningham had been a detail assistant in the detail office for a year and had previously served as a unit head in shipping in 1974. Further, assuming that Diana gained more particularized knowledge of direct response by accepting the lateral transfer to that area, the court is of the opinion that such knowledge was not material to obtaining the promotion. As Sharon Sills testified in her deposition, the same supervisor is over both the detail and direct response areas and that, at the time of the taking of the deposition, both areas are now under the detail office. (Sills deposition, p. 96).

Cunningham also contends that she should have received the promotion to unit head in the detail office given to Sandra Cooper in 1983. Cooper was hired by the defendant in 1977 as a general clerk in the detail office. Her file reflects a performance review in 1978 where she had obtained the position of detail assistant in FDC, even though she had been counseled for absenteeism both verbally and in writing in 1977. Her 1978 annual review shows that she received only "satisfactory" ratings on all criteria as a detail assistant in FDC as of 1980. In the same year, Cooper was again

counseled verbally for absenteeism. In 1981, Cooper again only received "satisfactory" ratings except for two "better than satisfactory" ratings on ability to work and get along with others and willingness to perform new tasks. Cooper was again counseled, this time in a written session, for excessive absenteeism and tardiness in 1981. In the position of secretary in FDC in 1982, Cooper began receiving more "better than satisfactory" ratings on her annual review. In 1983, Cooper received a code rating of 2 on her performance appraisal but was again counseled with a written warning in 1983 and a memo placed in her file in 1984 regarding her poor attendance. Given Cooper's generally lackluster performance record, her acute and persistent absenteeism problems, the fact that Cunningham had been a detail assistant in the detail office since 1980 and a unit head prior to that time, the court is of the opinion that Cunningham was better qualified than Cooper for the promotion Cooper received to unit head in 1983.

Besides the promotion to unit head in the detail office in 1980, Sheila Clifton also received a promotion to supervisor in FDC in 1983. Neither Clifton nor Cunningham had been assigned to FDC as of the time of the promotion. However, the court finds that Clifton was better qualified for the promotion since she had worked nearly two years as a unit head in the detail office while Cunningham was still working as a detail assistant in the detail office. The court finds that the quasi-supervisory experience Clifton received in the unit head position better qualified her for a promotion to a department to which she had never been assigned than did Cunningham's less responsible position of detail assistant.

As stated earlier, Cheryl Plunk received a promotion to administrative secretary in 1981. In 1983, Plunk was promoted to a unit head position in personnel and administration. The court finds that Plunk was better qualified for this position because of the specialized knowledge of administrative and personnel functions she would have

learned while serving as an administrative secretary.

Margie Klinger was promoted to unit head in the detail office in 1984 and was primarily responsible for load building and freight analysis functions. The parties stipulated in the pretrial order that Klinger had experience in the load building function prior to her promotion and that, at the time of the promotion, Cunningham had received some limited training in the load building function. Klinger was hired in 1979 as a general clerk in the detail office. In 1981, she was upgraded to the position of detail assistant. In 1983, Klinger was promoted to an administrative detail assistant position and, less than six months later, promoted again to the unit head position for which Cunningham claims entitlement. Although Klinger has received a number of promotions in a short time, the court is of the opinion that Klinger was better qualified for the unit head position in question because of her superior job performance. In 1981, her supervisor commented that she had done a "superior job", had a positive attitude and a great amount of flexibility. In her performance reviews, she received a "better than satisfactory" rating for most of the criteria and received a Code 2 rating in 1983 in her performance appraisal. The court can find nothing detrimental whatsoever in her record.

Sarah Splawn received an "upgrade" to administrative detail assistant in the detail office in February 1984. Splawn was hired in 1979 in the detail office. In 1981, her performance review shows that she had received a promotion to detail assistant and her supervisor's comments reflect, as of 1982, that she had continued to do "an excellent job." In 1983, Splawn received a code rating of 2 and her supervisor commented that her strong point was her familiarity with the DOC system. Her weak area, according to her supervisor, Pam Stark, was her " 'I know but *why* don't you?' style." At trial, Fortsch conceded that Splawn had been placed on probation when he left Penney's although the reason for this, he testified, was that her overall responsibilities had decreased. Therefore, he viewed her demotion not as a result of any deficient performance on her part, but as a decrease in responsibility required in her position. Due to Splawn's exceptional familiarity with the DOC system and her somewhat high performance ratings as compared to Cunningham's ratings, the court finds that Splawn was better qualified for the upgrade or promotion to administrative detail assistant than was Cunningham.

Brenda Crawford received an upgrade to administrative detail assistant in personnel administration in 1984. Fortsch testified that this was not a promotion but merely an upgrading of Crawford's position because of increased work responsibilities. Crawford began her employment in 1979 and worked as a detail assistant in FDC from 1979 until her promotion to administrative detail assistant in 1984. Her personnel file reflects a good, steady performance with Code 2 ratings in 1984 and 1985. Prior to her upgrade or promotion in 1984, Crawford received a Code 2 rating and was praised for being "very capable." In her more recent appraisals, Crawford was praised for her versatility, her professional manner, her productivity and for giving "110% every day." Given these outstanding comments and recent appraisals, the court is of the opinion that Crawford was better qualified for the upgrade or promotion to administrative detail assistant in personnel and administration than Cunningham.

Lastly, Cunningham claims that she should have received the upgrade or promotion to administrative detail assistant in personnel and administration received by Patty Baier in 1983. Fortsch testified that in making the upgrades to administrative detail assistant, he considered the employees' time in the area, attendance, leadership abilities, their files and their supervisors' recommendation. Baier's file only contains a 1984 performance appraisal in which she received a no. 2 code rating. Sharon Sills, her supervisor and personnel manager, commented that Baier was easily influenced by outside activities and had the

"potential" to be good at any job but needed to improve on her tardiness and concentrate more on completing one task before going on to another. As to this upgrade or promotion, the court is of the opinion that the plaintiff failed to submit enough evidence for the court to make an informed decision as to the relative qualifications of Baier and Cunningham on the ultimate issue as to whether the defendant intentionally discriminated against Cunningham.[4]

### Conclusions of Law

■ The first question for a determination by the court is whether the plaintiff in the case *sub judice* may proceed on a disproportionate impact theory or whether she is relegated to relief only under a disparate treatment theory. One of Cunningham's major complaints is that Penney's promotion policy is flawed because of subjective factors and practices. As stated in *Wambheim v. J.C. Penney Co., Inc.*, 705 F.2d 1492 (9th Cir.1983), *cert. denied*, 467 U.S. 1255, 104 S.Ct. 3544, 82 L.Ed.2d 848 (1984). Title VII prohibits two types of employment discrimination. First, it prohibits disparate treatment, or the intentional and favorable treatment of employees based on impermissible criteria. Secondly, it prohibits practices with a discriminatory impact, or essentially mutual practices that have a discriminatory impact and are not justified by business necessity. *Id.* at 1494. The Fifth Circuit has repeatedly held that when plaintiffs challenge a defendant's discretionary or subjective promotion procedures, the disparate treatment analysis should be utilized. *See, e.g., Watson v. Fort Worth Bank & Trust*, 798 F.2d 791, 797 (5th Cir.1986); *Lewis v. N.L.R.B.*, 750 F.2d 1266, 1271 (5th Cir.1985); *Pegues v. Mississippi State Employment Service*, 699 F.2d 760, 765 (5th Cir.); *cert. denied*, 464 U.S. 991, 104 S.Ct. 482, 78 L.Ed.2d 679 (1983); *Pouncy v. Prudential Ins. Co. of America*, 668 F.2d 795, 800 (5th Cir.1982);

*Garza v. Deaf Smith County*, 604 F.Supp. 46, 49 (N.D.Tex.1985). Accordingly, the court shall not undertake to analyze Penney's promotion practices under the disproportionate impact theory.

■ Under disparate treatment analysis, a plaintiff establishes a prima facie case of discriminatory refusal to promote her race and age discrimination by showing that she belongs to a protected group; that she was qualified for and applied for a promotion; that she was considered for and denied the promotion; and that other employees of similar qualifications who were not members of the protected group were indeed promoted at the time the plaintiff's request for promotion was denied. *Valentino v. United States Postal Service*, 674 F.2d 56, 63 (D.C.Cir.1982); *Crawford v. Western Elec. Co., Inc.*, 614 F.2d 1300, 1315 (5th Cir.1980). After the close of the plaintiff's case, the defendant moved for a directed verdict on the grounds that the plaintiff had failed to establish a prima facie case of discrimination for failing to promote Cunningham. The court, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, chose to carry the motion with the case. Having heard all of the evidence, and finding, as a matter of fact, that Cunningham was qualified for certain promotions which she would have received had it not been for intentional discrimination on the defendant's part, the court denies the defendant's motion. The plaintiff, having established a prima facie case by meeting the four requirements listed above, and the defendant having offered evidence sufficient to raise a genuine issue of fact as to whether it discriminated against Cunningham, the presumption and shifting burdens of proof outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) drop from the

---

**4.** A plaintiff must prove by a preponderance of the evidence that the defendant violated Title VII by intentionally discriminating against her with respect to each promotion. *See Lyford v. Schilling*, 750 F.2d 1341, 1344 (5th Cir.1985).

(once parties have introduced all evidence, district court must decide whether plaintiff has proved by a preponderance of evidence that defendant intentionally discriminated against plaintiff.)

case and the court proceeds to the ultimate factual inquiry of whether or not the defendant intentionally discriminated against Cunningham in violation of Title VII. *See United States Postal Bd. of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *Barnes v. Yellow Freight Systems, Inc.*, 778 F.2d 1096, 1100 (5th Cir.1985); *Lyford v. Schilling*, 750 F.2d 1341, 1344 (5th Cir.1985); *Mandhare v. W.S. LaFargue Elementary Schl.*, 605 F.Supp. 238, 241 (E.D.La.1985).

■ Preliminary to a legal discussion on plaintiff's claims of discrimination, the court addresses three legal matters raised by the parties in their opening arguments. First, the court concludes that Cunningham's 42 U.S.C. § 1981 claim need not be considered since plaintiff does not assert a Section 1981 violation on grounds different from those available under Title VII. As the Fifth Circuit stated in *Page v. U.S. Industries, Inc.*, 726 F.2d 1038 (5th Cir. 1984):

It is the rule of this Court that consideration of an alternative remedy brought under § 1981 is necessary only if its violation can be made out on grounds different from those available under Title VII. Plaintiffs have not argued that such distinctions exist. In any event, case law in this circuit indicates that the elements of substantive claims of employment discrimination brought under § 1981 parallel those claims brought under Title VII; *see Rivera v. City of Wichita Falls*, 665 F.2d 531, 534 n. 4 (5th Cir.1982).

726 F.2d at 1041 n. 2. *See also Watson v. Fort Worth Bank & Trust*, 798 F.2d 791, 794 n. 4 (5th Cir.1986) (same); *Parker v. Kaiser Aluminum & Chemical Corp.*, 727 F.2d 473, 475 n. 1 (5th Cir.) (same), *cert. denied*, 467 U.S. 1243, 104 S.Ct. 3516, 82 L.Ed.2d 824 (1984). Plaintiff's claim under 42 U.S.C. § 1982 is also inappropriate since there is no allegation of racial discrimination with regard to the purchase, sale, or leasing of real or personal property.

■ Secondly, the defendant argues that the first four promotions which Cunningham claims she should have received are

time barred because these claims occurred more than 180 days prior to the charge of discrimination filed by Cunningham. In response, the plaintiff argues that the first four promotions should be considered by the court as evidence of the defendant's past discrimination. In *Fisher v. Procter & Gamble Mfg. Co.*, 613 F.2d 527 (5th Cir.1980), *cert. denied*, 449 U.S. 1115, 101 S.Ct. 929, 66 L.Ed.2d 845 (1981), Procter & Gamble made a similar argument. In response, the Fifth Circuit stated:

Neither [*United Air Lines, Inc. v.*] *Evans* [431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977)] nor [*International Brotherhood of*] *Teamsters* [*v. U.S.*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)] foreclose consideration of prior discrimination in all circumstances. They hold only that prior discrimination, by itself, cannot make the operation of an otherwise bona fide seniority system unlawful. They do not hold, as the Company suggests that a continuing violation can never constitute an actual wrong; only that the *mere* perpetuation of the effects of pre-Act or time barred discrimination does not constitute a present violation.

613 F.2d at 540 (emphasis original). The court concluded:

The challenged evidence was improperly considered, however, only if the district court viewed the prior discriminatory acts as constituting the actionable wrongs upon which relief was based. (citations omitted). If, on the other hand, prior practices were considered relevant to show independently actionable conduct occurring within the statutory period, the district court did not err in taking the evidence into account.

*Id; see also Little v. Master-Bilt Products, Inc.*, 506 F.Supp. 319, 333 (N.D.Miss.1980) (same). Cunningham, having shown existence of a continuing violation in the actionable period, the court rules that those discriminatory acts occurring before the 180 days prior to the filing of the EEOC charge are admissible to aid in proving alleged

Title VII violations that have continued in the present.

■ Defendant also argues that plaintiff's statistical evidence should not be considered, citing to *Robinson v. City of Dallas*, 514 F.2d 1271, (5th Cir.1975). Therein the Fifth Circuit stated that while statistics alone may demonstrate a discriminatory effect sufficient to a establish prima facie case, small numbers fail to sufficiently support any conclusion as to whether an alleged discriminatory rule or practice has a discriminatory effect. *Id.* at 1273. Besides the problem of a small sample size, the plaintiff in the case *sub judice* also failed to call an expert witness to testify as to the significance of her statistics or whether the pool of employees in the office division are large enough for an effective comparison. As a result of these deficits, the court finds itself in a similar situation to the court in *Pegues v. Mississippi State Employment Service*, 699 F.2d at 760 (5th Cir.1983). In that case, the plaintiffs offered quantitative evidence of the disproportionate classification of blacks and women in supposedly less remunerative occupations during certain periods between 1970 and 1976. However, the plaintiffs offered no testimony, either lay or expert, to explain the importance of this data. Nor was an appropriate test of statistical significance applied. *Id.* at 766. The court concluded that the figures presented by the plaintiff were "of little probative value" and that "while precise calculations of statistical significance are not essential to statistical proof, [citations omitted], no valid conclusions regarding the relationship of observed selection patterns to the defendants' behavior can be drawn absent some minimum framework for analysis. Plaintiffs bear this burden." *Id.* at 767, 768. However, the court in the case *sub judice* chooses not to exclude plaintiff's statistical evidence since, even when such deficiencies exist, the plaintiff may make out a prima facie case by combining the insufficient statistical evidence with historical, anecdotal or circumstantial evidence. *Payne v. Travenol Laboratories*, 673 F.2d 798, 819 (5th Cir.), *cert. denied*, 459 U.S. 1038, 103

S.Ct. 452, 74 L.Ed.2d 605 (1982). In the court's opinion, as stated previously, the plaintiff succeeded in establishing a prima facie case even without the statistical evidence.

■ In the court's discussion in its findings of fact with regard to Penney's promotion procedures, it is clear that Penney's has a subjective promotion policy where performance appraisals and promotion decisions are made by an all white supervisory staff, that Penney's did not post notices of job vacancies in the office division and that seniority controls promotion decisions only when the supervisor decided that applicants were approximately equal in qualifications. The Fifth Circuit has consistently condemned subjective promotional policies and practices. *Pegues v. Mississippi State Employment Serv.*, 699 F.2d 760, 765 (5th Cir.) *cert. denied*, 464 U.S. 991, 104 S.Ct. 482, 78 L.Ed.2d 679 (1983) (selection processes relying on subjective judgments provide opportunity for intentional discrimination cognizable in disparate treatment action); *Fisher v. Procter & Gamble Mfg. Co.*, 613 F.2d 527, 546 (5th Cir.1980) (promotion factors of desire to work well, working well with others and learning work involve substantial subjectivity and significant underrepresentation of blacks in supervisory level management positions provide adequate basis for invalidation of company's program); *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 330 (5th Cir.1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978) (promotion/transfer procedures which depend almost entirely upon subjective evaluation and favorable recommendation of immediate foremen are ready mechanisms for discrimination); *Little v. Master-Bilt Products, Inc.*, 506 F.Supp. 319, 331 (N.D.Miss. 1980) (where promotions and upgrades are made largely on an ad hoc basis controlled by subjective determination of those qualified for job vacancies and where employer did not post notices of job vacancies, job qualifications or procedures to apply for promotions, promotion and upgrade procedures were discriminatory).

In a case very similar to the case *sub judice*, the district court in *Little v. Master-Bilt Products, Inc.*, 506 F.Supp. 319 (N.D.Miss.1980), noted that no written guidelines existed for evaluating employees; that the defendant did not post notices of job vacancies or notices of required qualifications; that candidates were usually not interviewed prior to promotion selection; that the management considered such criteria as job skills required either before or during employment, attitude and the employee's overall personnel file; and that, since there were no female supervisors, the job evaluation team was all male. 506 F.Supp. at 326. The only difference in the case *sub judice* is that the supervisors are all white and the charge is race and age discrimination instead of sex discrimination. In *Little*, the production manager and the plant's personnel manager both testified that they selected each individual for promotion because he or she was the best qualified for the job. *Id.* at 327. The district judge stated that the personnel manager failed to compare the resumes of those persons promoted with those qualified individuals who were not chosen for promotion and that the personnel manager also failed to testify as to what constituted minimum qualifications for each position he reviewed. *Id.* Similar to the factual situation in *Cunningham's* case, both the production manager and personnel manager conceded that they neither posted job vacancies nor job qualifications and that they interviewed candidates only when time permitted or the candidates' qualifications appeared approximately equal. *Id.* The production manager also testified that the employees' attitude, willingness and desire to work were considered important promotional factors. *Id.* The court concluded that the defendants' promotion procedures were arbitrary and awarded declaratory and injunctive relief. *Id.* at 335. In *Little*, the court also discussed "upgrades". The court concluded that "upgrades" should be considered promotions because "both denote advancement and increased pay; and that this advancement, whether characterized as promotion or upgrade, is not the result of the application of objective evaluation standards." *Id.* at 331. This court rules likewise.

In a disparate treatment case, the plaintiff has the "ultimate burden of persuading the court that she has been a victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). Although the promotion of a better qualified applicant is a legitimate and non-discriminatory reason which will bar Title VII recovery, *Jefferies v. Harris County Community Action*, 693 F.2d 589, 590 (5th Cir.1982), mere affirmations of good faith selection of the most qualified applicant have been held to inadequately rebut a plaintiff's establishment of a prima facie case. *Pegues v. Miss. State Employment Service*, 699 F.2d at 766. Where a plaintiff is deterred or precluded from applying for an available promotion, focusing on the reasons that a defendant gave for preferring those selected for promotions over those not selected is misplaced. *Lams v. General Waterworks Corp.*, 766 F.2d 386, 393 (8th Cir.1985). As the court stated in *Lams*, "maintenance of a largely segregated work force, by an all-white supervisory staff which ignored or discouraged black employees' efforts to seek promotions into all white or predominantly white job classifications, constitutes a clear violation of Title VII." *Id.* at 394.

Although Howard Fortsch and Penney's other witnesses all testified that each employee in the office division was considered for all promotions because it was assumed that all employees desire to be promoted, the court is of the opinion that all employees were not considered. As the court stated in its findings of fact, Bill Spangler conceded that Cunningham's file was not among those files considered for the promotion to administrative secretary awarded to Cheryl Plunk in 1981. Even though the

performance appraisals and annual reviews were made by an all-white supervisory staff, Cunningham's personnel file demonstrates that Cunningham is a solid, steady worker against whom no complaints have been made in her record for nearly the last 10 years. Although Fortsch testified, as to every promotion, that the reasons for promoting the individual selected were better qualifications and/or more experience in the particular area, examination of the work files of those individuals selected as compared to Cunningham's work file shows that, in two instances, by a preponderance of the evidence, that Cunningham would have received promotions had it not been for Penney's intentional discrimination. Accordingly, the court concludes that Cunningham is the victim of intentional discrimination in violation of Title VII with respect to the promotions awarded to Pam Diana in November 1982 and Sandra Cooper in August 1983. The court awards both back pay and front pay until the time when Cunningham receives a promotion to a position above that of detail assistant. Ingredients of back pay include the interest, overtime, shift differentials, and fringe benefits, such as vacation and sick pay. *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 263 (5th Cir.1974), *cert. denied*, 467 U.S. 1243, 104 S.Ct. 3515, 82 L.Ed.2d 824 (1984). The plaintiff is also entitled to a reasonable attorney's fee and costs. The parties shall negotiate and submit to the court within 15 days, calculations of the proper amount currently owed. The court will then enter a separate judgment.