**Bertha WYNN, Plaintiff,**

v.

**COLUMBUS MUNICIPAL SEPARATE SCHOOL DISTRICT, et al., Defendants.**

**Civ. A. No. EC 85–115–D–D.**

United States District Court, N.D. Mississippi, E.D.

July 26, 1988.

Dorothy Winston–Colom, Colom and Colom, Columbus, Miss., for plaintiff.

Shields Sims, Sims & Sims, Columbus, Miss., L.F. Sams, Jr., Thomas D. Murry, Mitchell, McNutt, Bush, Lagrone & Sams, Tupelo, Miss., for defendants.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

In this action plaintiff Bertha Wynn ("Wynn") sues the Columbus Municipal Separate School District ("Columbus Schools"), Board of Trustees members Mary Norwood, W.L. Edwards, Dick Rollins, John East and Art Neal ("Trustees"), Superintendent James V. Carr, Jr. ("Carr"), and Charles V. Newell ("Newell"), Principal of Lee High School, charging that she was unlawfully discriminated against on the basis of her sex in connection with the denial of her application for the position of Athletic Director at Lee High School in Columbus, Mississippi, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e, et seq. ("Title VII").[1]

After a trial on the merits on this action, the court now sets forth its findings of fact and conclusions of law pursuant to the requirements of Rule 52(a) of the Federal Rules of Civil Procedure.

## I.

## FINDINGS OF FACT

Plaintiff Wynn, a female, is a resident of Columbus, Lowndes County, Mississippi. At trial, Wynn testified that she graduated from Mississippi University for Women in 1963 with a Bachelors degree in Physical Education. Wynn was employed by Columbus Schools as a physical education instructor at Lee High School ("Lee High") commencing in 1963. Wynn later received her Master's degree at Mississippi State University in 1971. Wynn has been employed continuously by Columbus Schools since 1963.

During her tenure at Lee High, Wynn has taught girls' physical education classes and has coached various girls' athletic teams. In the course of her employment as a physical education teacher, Wynn explained, she has initiated several female sports programs which did not exist at Lee High prior to her employment in 1963. These sports include girls' volleyball, basketball, and softball, among others.

At the time of Wynn's initial employment by Columbus Schools in 1963, Billy Brewer was employed as Head Football Coach and Athletic Director at Lee High. Brewer had occupied these roles since 1961 and continued to serve in the dual capacity of Head Football Coach and Athletic Director until his resignation in 1969. As Mr. James V. Carr ("Carr"), retired Superintendent of Columbus Schools testified, the superintendent of schools and later the principal of Lee High performed the Athletic Director duties after Brewer's resignation.

Some time in April 1977, however, the Board of Trustees ("Board") called together all coaches in the Columbus Schools to discuss problems with the overall athletic program and to ascertain why the City of Columbus was not supporting the athletic programs of the Columbus Schools. Apparently, as a result of this 1977 meeting, the Board made the decision to return to the earlier practice of a combined position of Head Football Coach and Athletic Director. See Defendants' Exhibits 12 and 13.

In adopting this interim so-called "bifurcated" arrangement (i.e., separation of the Athletic Director duties from the Head Football Coach functions), the Board promulgated a separate job description for the Athletic Director sometime in 1971. See Plaintiff's Exhibit 5, Defendants' Exhibit 2.

---

1. All individual parties are apparently sued in their official capacities. Since Carr is no longer Superintendent of Columbus Schools and East is no longer a Trustee, their successors in these positions are automatically substituted as par-

ties/defendants by operation of Rule 25(d) of the Federal Rules of Civil Procedure, as are the successors to any other named defendants in this action.

When the positions were again combined in 1977, the Board made the proposed dual position a 12-month contract position (as compared to the previous 9-month contract for Athletic Director and Head Football Coach).

In 1981 the Board promulgated a supplemental "Job Description For Athletic Directors And Head Football Coach—Summer Months 1981."[2] As Carr testified, the summer month duties were added when the Athletic Director and Head Football Coach position was extended to a 12-month contract position. No party to this lawsuit has offered a combined job description entitled Athletic Director/Head Football Coach incorporating all the duties set forth in Plaintiff's Exhibit 5.

As several defense witnesses testified, the Board's decision to combine the Athletic Director and Head Football Coach functions after 1977 was based on the Trustees' perception that football was the "dominant" sport in the Columbus Schools. Since football was both the major revenue producer, as well as the single greatest cost item in the entire athletic program, the Board concluded that it was logical and reasonable to have the Head Football Coach also serve as Athletic Director.

Mr. Charles V. Newell ("Newell"), the principal at Lee High in 1984 and at present, testified that he felt football was the sport which had the most kids involved and that football was the focal point of the community. Newell added that he had grown up with the idea of head football coach serving as athletic director and that he himself had served in the dual role of coach/athletic director.

Mr. Thomas L. Cooley ("Cooley"), the current Superintendent of Columbus Schools, testifying from the records for the athletic program at Lee High, stated that during the 1983–84 school year, approximately 40 percent of the income for the athletic program was generated from football while approximately 61 percent of the expenditures of the entire athletic program were devoted to football. Cooley remarked that because of the overwhelming emphasis on football, it was his opinion that retaining the combined position was the best situation for both the 1983–84 school year and up through the present time. Cooley cited figures for the 1986–87 school year reflecting that revenue from football comprised 54 percent of the athletic program and expenditures comprised 47 percent, indicating that football continued to remain the "dominant" sport.

Mr. Johnny Bruce served as both Head Football Coach and Athletic Director at Lee High from January 1979 until his resignation on or about February 14, 1984. Upon Bruce's resignation, Wynn testified that Carr came to Lee High and suggested that she apply for the Athletic Director's job.

Wynn testified further that while Bruce was nominally serving as Head Football Coach and Athletic Director from 1979–1984, she felt that she was performing many of the Athletic Director's duties. Wynn stated that she was unaware that anyone else was acting in the capacity of Athletic Director until she learned that Bruce had this title approximately one year prior to his resignation. During the time she was performing these duties, Wynn viewed herself as "head" of the Physical Education Department at Lee High School.

Wynn also testified that she had worked in all sports, including football and basketball and had been placed in charge of all money and ticket sales for varsity football. Wynn collected ticket money from all of the schools, made deposits, and prepared financial statements for the Superintendent of Columbus Schools during the time Bruce held the title of Head Football Coach and Athletic Director. Wynn also indicated that for a while she was paid something extra for taking up money at football games but that later on she had no set salary for these duties. Wynn explained that because all football coaches were on the field during the games, she and other

**2.** It is unclear from the face of the supplemental job description whether the Board intended the "Athletic Directors and Head Football Coach" title to refer to one or two positions. *See* Defendants' Exhibit 3.

coaches were required to take care of ticket sales and "crowd control" at the games.

Based on her 20 years of coaching experience and her hands-on experience with what she perceived as the duties of the position, Wynn testified that she felt she was qualified to do the job of Athletic Director when she applied on February 15, 1984.

Mr. John East ("East"), who served on the Board of Trustees from 1977 to 1987, testified that after Bruce's resignation the Board had some discussion about leaving the Head Football Coach and Athletic Director situation as it was or separating the duties once again. As former superintendent Carr explained, he approached the Board with the idea of once again separating the Athletic Director's functions from the Head Football Coach.

East pointed out, however, that the Board never solicited applications for the single position of Athletic Director and the position was never advertised for applications. East expressed his opinion that there was in fact no separate "job" of Athletic Director in February 1984.

Nevertheless, Wynn and Mr. Bob Williford, the head boys' basketball coach at Lee High for the 1983–84 school year, applied for the position of Athletic Director. *See* Defendants' Exhibits 6 and 7. Mr. Bill Wilkerson ("Wilkerson"), one of Bruce's assistant football coaches, applied for the position of Head Football Coach and Athletic Director. *See* Defendants' Exhibit 8.

Upon Carr's recommendation, Wilkerson was officially appointed by the Board in March 1984 to serve as Head Football Coach at Lee High. *See* Defendants' Exhibit 9. Immediately after Bruce's resignation, Wilkerson had been recommended to Carr by Newell, the principal of Lee High, to serve as interim head Coach and Athletic Director for the remainder of the 1983–84 school year. *See* Defendants' Exhibit 4.

Carr testified that he wanted to reserve passing on to the Board Newell's recommendation that Wilkerson be appointed for the dual position of Head Football Coach and Athletic Director, primarily because Carr was considering recommending to the Board a review of the then-present combined structure of the position and was going to suggest that the Board consider whether the Athletic Director functions should be returned to the principals of the respective high schools. *See* Defendants' Exhibit 5. Carr testified that he therefore instructed Newell to have Wilkerson complete spring football practice as Head Football Coach pending further action on the recommendation that Wilkerson also be designated Athletic Director. Carr explained at trial that he thought the practice of one coach having jurisdiction and control over other coaches was ineffective and that this was why he wanted the principals of the high schools to act as Athletic Director. Accordingly, Newell himself acted as interim Athletic Director at Lee High from February 1984 through May 1984.

Sometime in March 1984, Carr suffered an incapacitating heart attack and apparently was unable to bring his recommendation regarding separation of the Head Football Coach and Athletic Director position before the Board for consideration. Carr was disabled from March 1984 through June 1984, during which time Cooley was designated as acting superintendent.

Meanwhile, in May 1984, the Board met at Lee High for their regular annual meeting at the school. At that time Newell inquired of the Board members concerning their plans for filling the Athletic Director's job. Newell explained that he felt the Athletic Director duties were becoming too heavy a load on him and that he desired some relief from the added responsibilities. Newell testified that the Trustees suggested he make a recommendation for Athletic Director and that appropriate action would then be taken.

Newell made his recommendation via letter dated May 9, 1984, recommending Wilkerson as Athletic Director at Lee High School for the 1984–85 school year. *See* Defendants' Exhibit 10. At the Board's regular May 1984 meeting, Newell's recommendation was ratified and Wilkerson was elected Athletic Director at Lee High for the 1984–85 school year. *See* Defendants' Exhibit 11.

Carr testified that it was his opinion, considering experience and knowledge of the school district and the entire athletic program, that Wynn was more qualified than Wilkerson. Wynn had a total of more than 20 years experience in the Columbus Schools while Wilkerson had only five years of experience. Wynn had been involved with virtually all sports in some capacity, while Wilkerson's experience was limited to football, basketball, cross-country, and an off-season strength training program. Carr noted that in all respects Wynn was probably better qualified than Wilkerson except for her absence of any experience with football.[3] Carr qualified his appraisal of Wynn, however, by stating that neither Wynn nor Wilkerson had any experience in the actual position of Athletic Director and that both would have been "rookies" at the job.

As noted above, during his five years at Lee High, apparently Wilkerson's only experience in the athletic program was in coaching football, basketball, cross-country and a strength training program. The court is significantly limited in its ability to ascertain Wilkerson's personal knowledge of the duties of the Athletic Director. For reasons known only to the defendants, Wilkerson was not presented to the court as a witness at trial.

The only testimonial evidence of Wilkerson's experience came from the hearsay descriptions and impressions of the Trustees, Newell, and plaintiff Wynn. Wynn suggested that Wilkerson and other male coaches had met together on occasion to establish athletic policy without input from female coaches. The court must presume that this suggestion was offered as an indication of Wilkerson's exposure to Bruce's performance as Athletic Director. The documentary evidence of Wilkerson's qualifications for the Athletic Director's duties consists solely of his letter of application. *See* Defendants' Exhibit 8. In his letter of

application, Wilkerson makes reference to his alleged "excellent overview of the entire athletic program" and "long association with the members of the present coaching staff" as indicative of his ability to serve as Head Football Coach and Athletic Director. Wilkerson does not explain how he obtained this "overview" of the entire athletic program.

Mr. John East, a Board member at the time Wilkerson was elected as Athletic Director, testified that when the Board elected Wilkerson as Athletic Director on or about May 14, 1984, the Board gave no consideration to Wynn's or Wilkerson's gender in reaching its ultimate decision. Rather, East maintained, the Board's decision was influenced primarily by the fact that Wilkerson was qualified to serve as Head Football Coach while Wynn and Williford were not.

East elaborated that in his mind, although he could not speak for the Board as a whole, the decision to continue the combined position by electing Wilkerson as Athletic Director was made for the same reason that decision was made in 1977, primarily because football continued in 1984 to be the predominant sport, having the most employees and money. Therefore, East opined, it was still logical for the Head Football Coach to also be the Athletic Director.

On cross-examination, however, East conceded that the combination of Head Football Coach and Athletic Director effectively excluded women who were not qualified as Head Football Coach. As East put it, he would not say that a woman could never be Athletic Director, but it would be rare. Unless she could meet the requirements for becoming Head Football Coach, a woman could not act as Athletic Director under the combined position arrangement. East reiterated, however, that Wynn's gender had nothing to do with the Board's rejection of her application for Athletic Di-

---

**3.** The court notes that no testimony was offered regarding the experience or qualifications of Bob Williford save and except the statement that he was a basketball coach with 11 years experience at Lee High. It is therefore unknown to the court whether Williford, the other

male applicant for the Athletic Director's position, had any experience either coaching football or performing the duties of the Athletic Director. In any event, the job description, Plaintiff's Exhibit 5, indicates no requirement of experience in coaching football.

rector. On redirect, East pointed out that Williford, a male, was denied the Athletic Director job not because of his gender but because he could not also serve as Head Football Coach.

Carr also testified that he thought Wynn would make a good Athletic Director if the job were separated from Head Football Coach and was not given to the principal. Carr stated, however, that he "thought" Wynn "knew" in May 1984 that the positions of Head Football Coach and Athletic Director were combined and that her consideration for the Athletic Director job was dependent upon the Board separating the jobs once again.

Cooley, the acting Superintendent in May 1984, explained that the Board's decision was based on its perception that the combined position of Head Football Coach and Athletic Director was the best situation for Lee High. Cooley's testimony was supported by the testimony of defendants' expert witness, Bob Tyler ("Tyler").

Tyler, a former coach at Mississippi State University, University of Mississippi, University of Alabama, and North Texas State University, was received as an expert in high school athletics. Tyler stated his opinion that he was "thoroughly convinced" that the combination of Head Football Coach and Athletic Director was a proper combination which would be a reasonable Board decision in the best interest of the Columbus Schools. Tyler explained that the Head Football Coach has the most contact with the public and could probably generate more interest in other sports while acting as Athletic Director. Tyler also expressed his opinion that in most cases football is the predominant high school sport and added that by combining Head Football Coach with Athletic Director the school district could supplement the Head Football Coach's salary and recruit better candidates. Tyler conceded, however, that in most cases the combination of Head Football Coach and Athletic Director would exclude women from becoming Athletic Director.

Defendants also offered as an expert Ricky Black, Head Football Coach and Athletic Director at Tupelo High School in Tupelo, Mississippi. Black was received as an expert by the court and testified extensively about the general duties of an athletic director. Black listed the following as among the primary duties of an Athletic Director and Head Football Coach: (1) community involvement (fund-raising and public outreach to generate interest in all sports); (2) finances (coordinating booster clubs and fund-raising efforts for all sports; (3) budgeting and generating community interest; (4) directing and mediating any conflicts among the various sports (including scheduling, budgeting and so forth). Black stated his opinion that it is very essential that the Athletic Director be able to raise monies to support all of the sports of the school. Black noted that the Athletic Director's "main job" is fund-raising and that this is why he is sent out into the community.[4]

On cross-examination, however, Black acknowledged that it is not absolutely necessary that the Head Football Coach serve as Athletic Director, but that the coach of the predominant sport in the community would, in his opinion, make the best Athletic Director. Black elaborated that school officials could observe which sport was the predominant one in the community and could "enhance" that sport by combining its head coach's job with the athletic director's job. Black also corroborated Tyler's testimony that it would be reasonable and in the best interest of the school district to combine the Head Football Coach with Athletic Director.

In rebuttal, plaintiff offered the testimony of Kathy Fleming and Nan Miller, both coaches and teachers within the Lowndes

---

**4.** The court has carefully reviewed the job description for Athletic Director promulgated by the Board in this case. With the exception of references to selling programs and selling advertising, there is no overt reference to the substantial amount of fund-raising suggested as required by the defendants' expert witnesses. *See* Plaintiff's Exhibit 5. Plaintiff Wynn also testified in rebuttal that all teachers and coaches are prohibited from becoming personally involved in fund-raising activities.

County School District, which comprises roughly the balance of Lowndes County not included in the Columbus Schools. Fleming testified that at New Hope High School, which the court notes is located only some 5–10 miles from Lee High, there was no separate Athletic Director. Miller stated that at Caledonia High School, which is located some 13 miles from Lee High, the dominant sport was baseball and the Athletic Director's position was not combined with the head football coach's position.

After Wilkerson was elected as Athletic Director in May 1984, Wynn filed a timely charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"), in which she complained that she had been discriminated against on the basis of her sex when she was not given the position of Athletic Director at Lee High. After the EEOC conducted an investigation, it issued Wynn a Right to Sue Letter sometime in December 1984.[5] Wynn timely filed her complaint in this action on March 19, 1985.

The court finds that nowhere on the face of Plaintiff's Exhibit 5 is there any indication that the Athletic Director position is a combined position. There is no mention within the four corners of the document that the Athletic Director duties are com-

bined with the job of Head Football Coach.[6] The court also finds that Defendants' Exhibits 10 and 11 clearly indicate that Bill Wilkerson was recommended for and elected as Athletic Director at a time separate from and subsequent to his election as Head Football Coach.[7]

Perhaps the most probative evidence that the Head Football Coach and Athletic Director positions are not one and the same is the unrefuted testimony of Jackie Culpepper, a female coach at Columbus Caldwell High School, the sister school to Lee High School. Culpepper testified that for the 1987–88 school year, Randy Martin was serving as Head Football Coach while Assistant Principal Sam Fletcher was performing the job of Athletic Director at Caldwell High School.

Culpepper's testimony, which was not objected to nor impeached on cross-examination, persuades the court that the supposedly combined position of Head Football Coach and Athletic Director is only a unified position when the Board chooses to appoint one person to perform both jobs. At the time Wynn applied for the position in February 1984, no decision had yet been made to combine or separate the two jobs. Rather, the Board's first action after plaintiff applied for the position was its decision in March 1984 to elect Bill Wilkerson as

---

**5.** At the trial of this cause, the court admitted into evidence over the plaintiff's objection a document from the EEOC file. *See* Defendants' Exhibit 1. That document contains the EEOC's determination that Wynn's charges of sexual discrimination were unsupported by the evidence. Based on the Fifth Circuit's recent decision in *Olitsky v. Spencer Gifts, Inc.,* 842 F.2d 123 (5th Cir.1988), however, the court notes that admission of EEOC conciliation material into the trial record may have been error. In this bench trial, however, the court has corrected its possible error by giving no consideration whatsoever to Defendant's Exhibit 1.

**6.** Interestingly enough, the job description contains a statement to the effect that: "The Head Coach of each sport shall report to the Athletic Director in all matters relating to athletics." No exclusion from this obligation is indicated for Head Football Coach. There is likewise no requirement listed in the job description requiring Athletic Director to be qualified as Head Football Coach.

**7.** Defendants have not offered any evidence reflecting official action by the Board to permanently combine the positions of Head Football Coach and Athletic Director into one position. The Mississippi Supreme Court has ruled that Boards of Trustees for school districts can only act through their minutes. *Cheatham v. Smith,* 229 Miss. 803, 814, 92 So.2d 203, 208 (1957); *see also* Miss.Code Ann. Sections 37–6–9, 37–7–301 through 37–7–307, (Cum.Supp.1987). The defendants have offered no board minutes reflecting official action combining the positions of Head Football Coach and Athletic Director into one position. Rather, defendants have merely offered testimony and excerpts from Board minutes reflecting that on several occasions in the past individual coaches have been appointed to serve simultaneously as Head Football Coach and Athletic Director. *See* Defendants' Exhibits 12 and 13. Mr. East admitted that Wilkerson did not automatically become Athletic Director when he was elected as Head Football Coach: subsequent action was required by the Board to elect Wilkerson as Athletic Director.

Head Football Coach at Lee High. Wilkerson was not elected as Athletic Director until May 1984, some three months after Wynn applied for that job. Thus, the job remained open after Wynn applied.

## II.

### CONCLUSIONS OF LAW

In this sex discrimination case, the court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. Section 2000e–5(f)(3). The provisions of Title VII, 42 U.S.C. Section 2000e, *et seq.*, only prohibit employment discrimination on the basis of race, color, religion, sex, or national origin.

The United States Supreme Court has ruled that the burden of proof in a Title VII case is upon the plaintiff to establish a *prima facie* case of discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once the plaintiff has put on a *prima facie* case, the defendant must introduce evidence of a legitimate, non-discriminatory reason for its actions. *Burdine, supra*, 450 U.S. at 257–258, 101 S.Ct. at 1095–1096, 67 L.Ed.2d at 217–218. The plaintiff then has the opportunity to prove that the legitimate reasons offered by the defendant are in fact a pretext for discrimination. *Id.* The court addresses each element of this three-pronged approach separately below.

### A. Plaintiff's *Prima Facie* Case

To establish a *prima facie* case of sex discrimination, plaintiff must prove: (1) that she applied for an available position for which she was qualified; but, (2) that she was rejected "under circumstances that give rise to an inference of unlawful discrimination." *Burdine, supra* at 253, 101 S.Ct. at 1094, 67 L.Ed.2d at 215.

### 1. *Disparate Treatment*

■ Defendants argue initially that Wynn has failed to make out a *prima facie* case of disparate treatment because she did not apply for an "available" position for which she was qualified, having applied only for the Athletic Director "aspect" of the alleged "combined" position of Head Football Coach and Athletic Director. Defendants state that the Athletic Director "duties" never in fact existed as a separate, available position. The court rejects this contention.

Based on the testimony and evidence adduced at trial, the court holds that there did exist the separate position of Athletic Director for which Wynn applied. In reaching this conclusion, the court relies in part on Plaintiff's Exhibit 5, the job description for Athletic Director. Wynn testified she was given this job description by Superintendent J.V. Carr, who suggested that she apply for the job. The court also relies heavily upon the testimony of plaintiff's rebuttal witness, Jackie Culpepper, as set forth in the court's findings of fact, *supra*.

Accordingly, the court finds that Wynn did apply for an available position when she submitted her letter of application for the position of Athletic Director on February 16, 1984. *See* Defendants' Exhibit 7. The court next must consider whether Wynn was qualified for the position of Athletic Director when she applied for same.

The duties of the Athletic Director position are set forth in Plaintiff's Exhibit 5 (which is identical to Defendants' Exhibit 2). These duties include, *inter alia:* consulting with the High School Principal and Junior High School Principal in regard to matters pertaining to that particular school, particularly with reference to the inter-school athletic program; assuring that all members of the staff are aware of the requirements of the Mississippi High School Activities Association and that the inter-school athletic program is conducted in accordance with regulations of that body; arrange, according to current policies, schedules for all inter-school athletic events; make arrangements for transportation, meals and lodging required to carry on the inter-school athletic program; provide tickets and ticket salesmen; be responsible for programs and sale of advertisement in said programs for all inter-school

athletic events; be responsible for or delegate responsibility for selling, collecting, depositing, and reporting all monies derived from the sale of programs; responsibility for all purchases made by the interschool athletic program, maintaining accounts current by approving and delivering all invoices not later than the second Saturday in each month; preparation of a budget for the Athletic Department for presentation to the Principal and Superintendent prior to May 1 of each year.

Wynn testified that she had prior experience in many of the Athletic Director's duties. The court has no basis for meaningfully comparing Bill Wilkerson's qualifications to those of Wynn because the defendants failed to produce sufficient evidence of Wilkerson's experience, if any, with the duties of the Athletic Director position. Wilkerson, a male football coach at Lee High School, was not called as a witness by defendants to explain why his five years of coaching experience made him a better or equally qualified candidate for the position of Athletic Director.[8]

Based solely on the testimonial and documentary evidence adduced at trial, the court holds that plaintiff Wynn was qualified for the position of Athletic Director when she applied for same.

The court must next consider whether Wynn was rejected for the position of Athletic Director under circumstances which give rise to an inference of unlawful discrimination. *Burdine, supra.* At this juncture, the court must carefully consider that plaintiff, a female, was rejected along with another male applicant, Bob Williford, for the position. The court is of the opinion that this fact does not represent a fatal flaw in plaintiff's attempt to make out a *prima facie* case of sexually-motivated disparate treatment.

Plaintiff's testimony establishes that Williford was a basketball coach with 11 years of experience at Lee High School. Little else about Williford's experience and qualifications was made known to the court.

There was no evidence offered to show whether Williford had any prior experience in or exposure to the duties of the position of Athletic Director. Thus, the court is restricted in its ability to draw inferences from the Board's failure to appoint Wynn or Williford as Athletic Director instead of Wilkerson.

Board member East testified that no consideration whatsoever was given to Wynn's gender when the decision to reject her for the Athletic Director was made. Rather, as East explained, the Board decision was motivated primarily by its desire to maintain the combined position of Head Football Coach and Athletic Director. Wynn's lack of experience and inability to perform the job of Head Football Coach, just as Williford's inability to serve as Head Football Coach, was the basis for the Board's decision to reject both Wynn and Williford.

Plaintiff would have the court conclude that since Wilkerson, a male, was given the position and Wynn, a female, was rejected for the position of Athletic Director, the decision to select Wilkerson as the Athletic Director must have involved discriminatory animus. The Supreme Court has held that once all obvious, legitimate reasons have been eliminated, a presumption of discrimination is reasonable because:

> [I]t is more likely than not the employer, whom we generally assume acts with *some* reason, based his decision on an impermissible consideration.... [thus] we [may] infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations.

*Furnco Construction Co. v. Waters,* 438 U.S. 567, 577–580, 98 S.Ct. 2943, 2949–2951, 57 L.Ed.2d 957, 967–969 (1978). Wynn's argument pretermits any consideration of the reasons why Bob Williford was denied the position of Athletic Director. Williford, however, was apparently less qualified for the position than Wynn. Thus, Williford's

---

8. The defendants also offered no evidence or testimony to establish whether Bob Williford, the other male applicant for the Athletic Di-

rector position, was more or less qualified than plaintiff for the job.

rejection, standing alone, is not probative on the issue of discriminatory animus in Wynn's rejection.

The court is of the opinion that the discriminatory animus plaintiff seeks to prove, however, may reasonably be inferred from the basis of the defendants' decision not to elect Wynn as Athletic Director. As the defendants' witnesses testified, Wynn was not selected as Athletic Director primarily because the position required that the successful applicant also be able to serve as Head Football Coach, a position for which Wynn did not apply and admittedly could not perform.

Seen in its simplest terms, the decision not to appoint Wynn as Athletic Director was based on her sex because a female allegedly was not qualified to act as Head Football Coach and therefore was not qualified to become Head Football Coach and Athletic Director. In applying this requirement to Wynn, the defendants excluded her from consideration for the position while appointing a less-qualified male to fill the vacancy. The inference of discriminatory animus in this decision is clear.

■ Such wholesale exclusion of a class of job applicants based solely on their sex is valid only when the essence of the business would be undermined by not having members of one sex exclusively, *Diaz v. Pan American World Airways, Inc.*, 442 F.2d 385 (5th Cir.), *cert. denied*, 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971), or where the employer can establish some "bona fide occupational qualification" ("BFOQ") reasonably necessary to the normal operation of its enterprise. 42 U.S.C. Section 2000e–2(e).

Insofar as plaintiff, a protected class member under Title VII, applied for an available position for which she was qualified and which was filled by a lesser qualified and non-protected male, the court holds that Wynn has made out a *prima facie* case of sexually-motivated disparate treatment. Once the plaintiff has satisfied her burden of proving a *prima facie* case, the court's inquiry proceeds to the next stage, requiring that the defendants artic-

ulate a legitimate, non-discriminatory reason for their actions.

### 2. *Disparate Impact*

Perhaps perceiving some weakness in her disparate treatment case, Wynn interposes at this juncture a disparate impact argument, contending that the requirement that the Athletic Director also serve as Head Football Coach has a disparate impact on females and unlawfully excludes female coaches from consideration for the position of Athletic Director.

■ To establish a *prima facie* case of disparate impact, the plaintiff must first identify a facially neutral employment practice or barrier that has the effect of disqualifying a disproportionate number of members of a protected class from employment opportunities. *Connecticut v. Teal*, 457 U.S. 440, 446, 102 S.Ct. 2525, 2530, 73 L.Ed.2d 130, 137 (1982); *Bunch v. Bullard*, 795 F.2d 384, 392 (5th Cir.1986). Once the plaintiff has put on a *prima facie* case, the burden of production then shifts to the employer to introduce evidence that the challenged employment practice which operates to exclude a larger portion of a protected class is job-related. *Walls v. Mississippi Dept. of Public Welfare*, 730 F.2d 306, 315 (5th Cir.1984); *Carpenter v. Stephen F. Austin State University*, 706 F.2d 608, 621 (5th Cir.1983). Once the employer has shown that the employment barrier is job-related, the plaintiff then may still be able to show that the barrier is "a mere pretext for discrimination", *Bunch*, 795 F.2d at 393, by showing that other adequate selection devices are available which do not have a discriminatory effect against a protected class. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280, 301 (1975); *Rivera v. City of Wichita Falls*, 665 F.2d 531 (5th Cir.1982).

The disparate impact model is one which is often used by plaintiffs in Title VII cases but one which is often misunderstood or misapplied. As the Fifth Circuit has cautioned: "The disparate impact model applies only when an employer has instituted a specific procedure, usually a selection

criterion for employment, that can be shown to have a causal connection to a class imbalance in the work force." *Pouncy v. Prudential Ins. Co. of America*, 668 F.2d 795, 800 (5th Cir.1982). The disparate impact model is designed to test facially neutral, objective employment practices, not the subjective criteria often used to evaluate employees in hiring and job placement decisions. *Carroll v. Sears, Roebuck & Co.*, 708 F.2d 183, 188–189 (5th Cir.1983); *but see Watson v. Fort Worth Bank and Trust*, —— U.S. ——, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988) (disparate impact analysis may be applied to subjective employment criteria).

■ In the case *sub judice*, plaintiff characterizes the requirement that Athletic Director also be qualified to act as Head Football Coach as a facially neutral, objective employment criterion which has a disparate impact on females seeking the position of Athletic Director. Although the court agrees that the requirement has a disparate impact on individuals seeking the Athletic Director position who are not qualified to serve as Head Football Coach—including male and female basketball, volleyball, track, and baseball coaches—the court is not convinced that the requirement has a disparate impact on females only.

As her statistical pool, plaintiff utilizes all Athletic Directors throughout the State of Mississippi. *See* Plaintiff's Exhibit 9. Plaintiff asserts that since only 62 of 192 individuals who are not head football coach have been selected to serve as athletic director, the requirement that Athletic Director serve as Head Football Coach has a disparate impact on females. Plaintiff's proof also establishes that of 192 athletic directors statewide, only two are females. Plaintiff also has established that no head football coach in Mississippi is a female. Plaintiff's Exhibit 9.

The court is of the opinion that plaintiff's disparate impact theory is flawed in two respects. First and foremost, the court concludes that plaintiff has chosen an improper pool of applicants from whom to draw her statistics. The fact that very few women across the State of Mississippi are selected to serve as Athletic Director bears only a tenuous relationship at best, if any relationship at all, to the issue of whether Columbus Schools discriminates in its selection of Athletic Directors. Plaintiff has not proven that these individuals represent a minimum framework for analysis on the issue of Columbus Schools alleged discriminatory hiring practices in selecting its Athletic Director. *See Cunningham v. J.C. Penney Co.*, 642 F.Supp. 1517, 1529 (N.D. Miss.1986).

Secondly, plaintiff's statistical evidence is drawn from a universe of individuals including both members and non-members of the protected class of females among whom plaintiff is included. The numerous male coaches who are not qualified as head football coach who are thus denied consideration for an athletic director's job—including in this case Bob Williford, who was denied the Lee High Athletic Director job along with plaintiff—are not within an identifiably or arguably protected class under Title VII.

The court is of the opinion that the only proper group for consideration in the case at bar are those female coaches in the Columbus Schools who have applied for and been denied the position of Athletic Director because of their lack of qualifications for the job of Head Football Coach. Clearly, the court is only concerned here with the alleged discriminatory acts of the defendants in this action, not some larger group of all school districts throughout the State of Mississippi who have not appointed women as athletic directors. The alleged discriminatory practice of requiring the Athletic Director to serve also as Head Football Coach is applied *only* to prospective employees of Columbus Schools. *Robinson v. City of Dallas*, 514 F.2d 1271, 1273–1274 (5th Cir.1975).

This relevant class of individuals includes but one applicant, plaintiff Wynn herself. The statistical significance of one individual in terms of its predictive or inferential value is virtually non-existent. As the Eighth Circuit has noted: "Statistical evidence derived from an extremely small universe ... has little predictive value and must be dis-

regarded...." *Harper v. Trans World Airlines, Inc.*, 525 F.2d 409, 412 (8th Cir. 1975) (citing *Robinson v. City of Dallas*, 514 F.2d at 1273). The Supreme Court also indicated in a recent decision that where a small number of applicants ·is involved, it may well be "that the relevant data base is too small to permit any meaningful statistical analysis...." *Watson v. Fort Worth Bank and Trust, supra* —— U.S. at ——, 108 S.Ct. at 2791. The court is also of the opinion that discriminatory impact cannot be established by one isolated decision such as the one involved here. *See Coe v. Yellow Freight System, Inc.*, 646 F.2d 444, 451 (10th Cir.1981); *see also Price v. Denison Independent School Dist.*, 694 F.2d 334, 377 (5th Cir.1982) (court should not create a *prima facie* case of employment discrimination on too narrow a statistical sample).

In view of the fact that Wynn is the only female coach who has ever applied for the position of Athletic Director within the Columbus Schools, the court concludes that she has failed to establish a *prima facie* case of disparate impact inasmuch as she has failed to establish a causal connection between the requirement that Athletic Director also serve as Head Football Coach and any *actual* effect of excluding a disproportionate number of members of a protected class from employment opportunities. Plaintiff has shown no pattern and practice on the part of Columbus Schools of denying all or a significant number of female applicants consideration for the job of Athletic Director.[9] Plaintiff's statistical proof has little probative value and has been disregarded by the court. *See Antonio v. Wards Cove Packing Co., Inc.*, 768

F.2d 1120, 1128–1129 (9th Cir.1985), *withdrawn by* 787 F.2d 462 (9th Cir.1985) and *clarified by* 827 F.2d 439 (9th Cir.1987). It is beyond dispute that "Title VII, however, does not demand that an employer give preferential treatment to minorities or women." *Burdine, supra* 450 U.S. at 259, 101 S.Ct. at 1096, 67 L.Ed.2d at 219.

The court holds that although Wynn applied for an available position for which she was qualified and for which she was rejected, Wynn has failed to make out a *prima facie* case of sexually-motivated disparate impact. Plaintiff's disparate impact proof fails to show that Columbus Schools practiced any distinguishable pattern of rejecting female applicants for Athletic Director.[10] Plaintiff has made out a *prima facie* case on her alternate theory of recovery, disparate treatment.

### B. Defendants' Legitimate, Non–Discriminatory Reason

▇ The defendants' primary argument in support of their decision not to appoint Wynn as Athletic Director at Lee High School is tied to the assertion that since football is the "dominant sport" at Lee High, it is necessary to have the Head Football Coach serve as Athletic Director. *Ergo*, since Wynn was not qualified to serve as Head Football Coach, she was not considered a proper candidate for the Athletic Director position. The court finds this argument unpersuasive.

▇ The court notes the legitimate, non-discriminatory reason articulated by the defendant "must be legally sufficient to justify a judgment for the defendant." *Burdine, supra* at 255, 101 S.Ct. at 1094,

---

**9.** Plaintiff points out that of some six female coaches in the Columbus Schools, none is serving as Head Football Coach and therefore all are *excluded from consideration for the job of* Head Football Coach and Athletic Director. If plaintiff had offered proof that these individuals had prior knowledge that the Athletic Director was required to serve as Head Football Coach and females were therefore discouraged from applying for the position, Wynn's disparate impact theory might be more persuasive. The focus of Wynn's proof throughout the trial, however, was to show that she had no knowledge that Head Football Coach and Athletic Director was a combined position.

**10.** This is not to suggest that the court found no discriminatory motive in the Board's decision. Quite obviously, the requirement that the Athletic Director serve as Head Football Coach has a discriminatory effect upon every applicant not qualified to serve as Head Football Coach who seeks that position. This requirement, however, has not been shown to have a disproportionately discriminatory effect upon female applicants as compared to all other applicants. As noted above, plaintiff has proven a *prima facie* case of disparate treatment as regards *her* rejection for the position of Athletic Director.

67 L.Ed.2d at 216. The court is of the opinion that the explanation offered by defendants for plaintiff's rejection for the Athletic Director position is insufficient to justify a judgment for the defendants. In this connection, the court recognizes that the "business necessity" or BFOQ defense requires something more than a showing of business convenience. *Diaz, supra.* Likewise, the court is of the opinion that an employment decision affecting an individual such as plaintiff based solely on the preferences of the employer violates Title VII.

The defendants explain that the Head Football Coach/Athletic Director is responsible for considerable fund-raising activities on behalf of his school and is also involved in repeated public contact in an effort to generate support for the overall athletic program. Because football is the "dominant" sport at Lee High School, defendants contend, it is logical and reasonable to permit the Head Football Coach to serve as Athletic Director. Logical and reasonable it may be, legitimate and nondiscriminatory it is not.

Defendants have offered no evidence that the Head Football Coach could not continue to perform these "public relations" or fund-raising functions while some other individual performs the primarily administrative duties of the Athletic Director. The fact that in the most recent school year an assistant principal was assigned the duties of Athletic Director at Caldwell High School, the sister school of Lee High also governed by the defendant school board, clearly indicates that the Athletic Director's duties are capable of being performed by an individual other than the Head Football Coach.

Defendants do not and could not seriously contend that the position of Athletic Director poses any danger of physical harm to females or that females are physically incapable of performing the duties of the Athletic Director position. *Cf. Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977) (exclusion of female prison guards from positions involving contact with dangerous male prisoners deemed permissible). Defendants suggestion that it is somehow "imperative" that the Head Football Coach also serve as Athletic Director is, again, contradicted by their own actions for the 1987–88 school year, when an assistant principal at Caldwell High School was elected to serve as Athletic Director. Presumably, if football is the dominant sport in the community, as defendants suggest, it would be the dominant sport at both high schools in the Columbus School District.

In the "typical" Title VII case, if such a case exists, the defendant may often rebut the plaintiff's *prima facie* case by showing that the challenged practice or requirement is job-related. *Page v. U.S. Industries, Inc.,* 726 F.2d 1038 (5th Cir.1984). To make this showing, however, the employer must show that any given requirement has a manifest relationship to the employment in question. *Dothard, supra* 433 U.S. at 329, 97 S.Ct. at 2727, 53 L.Ed.2d at 797. Even if the employer makes a showing that the challenged practice is job-related, the plaintiff may still prevail by showing less discriminatory alternatives which would serve the employer's legitimate interests. *See Rivera v. Wichita Falls, supra,* 665 F.2d at 535. Defendants in the case at bar, however, have failed to make even a colorable showing that the combination of Head Football Coach with Athletic Director bears any relationship to the actual duties of the Athletic Director.

The thrust of the defendants' argument in response to the plaintiff's disparate treatment claim is that because football is the predominant sport at Lee High School in Columbus, Lowndes County, Mississippi the requirement that the athletic director also be the head football coach constitutes a "bona fide occupational qualification" (BFOQ). Yet the proof in the case *sub judice* reveals that from 1969 to 1977 and from March 1984 to June 1984 the positions were separated at Lee High School. Further at Caldwell High School in Columbus the positions are currently separated. Also at the Lowndes County high schools at New Hope and Caledonia the head football coach is not the athletic director.

This court has difficulty in following the argument that football is so dominant at Lee High School that the head football coach must serve as athletic director while in the same community and county in other high schools this requirement does not exist. There was no proof offered that would set Columbus Lee High School apart from other high schools in Columbus and Lowndes County insofar as the legitimacy of the foregoing "bona fide occupational qualification" is concerned.

In the case *sub judice*, the court holds that the defendants have failed to articulate a legitimate, non-discriminatory reason for excluding females from consideration for the position of Athletic Director. Defendants have also failed to show a sufficient job-related nexus between the requirement that the Head Football Coach serve as Athletic Director and the actual duties of the Athletic Director position.

#### C. Pretext

■ The court holds that the defendants have failed to rebut plaintiff's *prima facie* case. Assuming, *arguendo*, that the defendants' preference for having the Head Football Coach serve as Athletic Director is a legitimate, non-discriminatory reason for plaintiff's rejection for that position, the court is convinced that plaintiff has successfully shown that this reason is a pretext for discrimination. The alleged necessity for having the Head Football Coach/Athletic Director as a combined position is rebutted by the defendants' own actions of appointing an assistant principal at Caldwell High School to serve as Athletic Director for that school for the 1987–88 school year. The fact that at several times in the past the assistant principal at Lee High has served as Athletic Director, including the interim period before Bill Wilkerson was appointed as Athletic Director, indicates conclusively to the court that the desired combination of Head Football Coach and Athletic Director is merely an impermissible preference which unlawfully excluded plaintiff from consideration for the Athletic Director's job.

### III.

### CONCLUSION

As the Supreme Court has stated time after time, the plaintiff always retains the "ultimate burden of persuading the court that she has been a victim of intentional discrimination." *Burdine, supra* 450 U.S. at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217.[11] The court concludes as a matter of law that plaintiff has met that burden in the case at bar.

Accordingly, plaintiff is entitled to a judgment and is entitled to be made whole. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Plaintiff is entitled to appropriate equitable relief, including placement into the Athletic Director's position and an award of back pay for those earnings she was denied as a result of the defendants' actions in violation of Title VII.[12]

A separate order and judgment consistent with this opinion will be entered.

---

11. The *Burdine* standard was recently reaffirmed and reiterated by the Supreme Court in *Watson v. Fort Worth Bank and Trust, supra,* in which the court stated that the burden of proof remains with the plaintiff at all times "to show that the practice in question has caused the exclusion of applications for jobs or promotions because of their membership in a protected group." *Id.* —— U.S. at ——, 108 S.Ct. at 2789.

12. The court notes that all Board members and the Superintendent were sued in their official capacities as agents of Columbus Schools. There was no proof that Charles V. Newell, Principal of Lee High School, was acting beyond the scope of his authority or outside the course and scope of his employment. Accordingly, judgment will be entered only against Columbus Municipal Separate School District.